953 A.2d 1219 (2008)
402 N.J. Super. 298
Michael A. STRAHAN, Plaintiff-Appellant,
v.
Jean M. STRAHAN, Defendant-Respondent.
No. A-3747-06T4
Superior Court of New Jersey, Appellate Division.
Argued April 9, 2008.
Decided August 26, 2008.
*1222 Angelo Genova, Livingston, argued the cause for appellant (Genova, Burns & Vernoia, Pashman Stein, P.C., and Walder, Hayden and Brogan, attorneys; Michael S. Stein and Sean Mack, on the brief).
Ellen C. Marshall argued the cause, for respondent.
Before Judges PARKER, R.B. COLEMAN and LYONS.
The opinion of the court was delivered by
PARKER, J.A.D.
Plaintiff Michael Strahan appeals from an amended judgment of divorce entered on January 12, 2007 and an order entered on March 22, 2007 denying his motion for reconsideration.
Plaintiff is a football player who has been under contract with the New York Giants since 1993. He began dating defendant in October 1994. At the time they met, defendant was employed as a model and manager for a cosmetics company, earning about $70,000 per year. In 1995, the parties moved in together and defendant quit her job, purportedly at plaintiff's request. When plaintiff extended a marriage proposal, defendant agreed to sign a pre-nuptial agreement (agreement) before they married on July 18, 1999. Twin girls were born of the marriage on October 28, 2004.
The complaint for divorce was filed on March 14, 2005. The parties were able to agree on joint legal custody of the children with defendant having primary residential custody. The matter was tried over eleven days in June and July 2006. A dual judgment of divorce was entered on July 20, 2006 dissolving the marriage. An amended judgment was entered on January 12, 2007 addressing the validity of the agreement, equitable distribution, child support, disability insurance for plaintiff and counsel fees.
In this appeal, plaintiff argues that (1) he performed his obligations under the agreement and the equitable distribution of the parties' joint assets exceeded the amount to which defendant was entitled under the agreement; (2) the trial court erred in its calculation of child support and failed to make the necessary findings of fact and conclusions of law in awarding child support; (3) the trial court erred in requiring plaintiff to pay ninety-one percent of the total child support; (4) the trial court erred in ordering plaintiff to obtain a $7.5 million disability insurance policy; and (5) the trial court erred in awarding $13,777.50 in counsel and accountant fees to defendant.
During the pendency of this appeal, the parties reached an agreement and entered a partial stipulation dismissing the equitable distribution issues, leaving only child support, the disability insurance and counsel fees to be addressed by this court. On July 11, 2008 an order was entered memorializing *1223 the stipulation and allowing the parties to distribute the monies held in the court's trust fund escrow account. Accordingly, we will address only the remaining issues of (a) child support; (b) the disability insurance policy; and (c) counsel fees.

A. Child Support

Plaintiff contends that the trial court erred in setting the amount of supplemental child support and in ordering him to pay 91% of the amount.
Both parents have a shared obligation to support their children. Koelble v. Koelble, 261 N.J.Super. 190, 194, 618 A.2d 377 (App.Div.1992). "[W]here the parties have the financial wherewithal to provide for their children, the children are entitled to the benefit of financial advantages available to them." Isaacson v. Isaacson, 348 N.J.Super. 560, 579, 792 A.2d 525 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). "Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement." Id. at 580, 792 A.2d 525.
In setting child support, the court shall consider the factors set forth in N.J.S.A. 2A:34-23(a):
(1) Needs of the child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;
(8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.
"If the combined net income of the parents is more than $187,200 per year, the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200) and the factors specified in N.J.S.A. 2A:34-23." Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at 2302 (2007). "The key to both the [g]uidelines and the statutory factors is flexibility and the best interest of children." Pascale v. Pascale, 140 N.J. 583, 594, 660 A.2d 485 (1995).
In the context of high-income parents whose ability to pay is not an issue, "the dominant guideline for consideration is the reasonable needs of the children, which must be addressed in the context of the standard of living of the parties. The needs of the children must be the centerpiece of any relevant analysis." Isaacson, supra, 348 N.J.Super. at 581, 792 A.2d 525 (emphasis added). The consideration of needs must include the age and health of the children  with the understanding that infants' needs are less than those of teenagers  as well as any assets or income of the children. Ibid.
Determining a child's "needs" in high-income earning families presents "unique problems." Id. at 582, 792 A.2d 525.
First, a balance must be struck between reasonable needs, which reflect lifestyle *1224 opportunities, while at the same time precluding an inappropriate windfall to the child or even in some cases infringing on the legitimate right of either parent to determine the appropriate lifestyle of a child. This latter consideration involves a careful balancing of interests reflecting that a child's entitlement to share in a parent's good fortune does not deprive either parent of the right to participate in the development of an appropriate value system for a child. This is a critical tension that may develop between competing parents. Ultimately, the needs of a child in such circumstances also calls to the fore the best interests of a child.
[Ibid. (citation omitted).]
"Judges must be vigilant in providing for `needs' consistent with lifestyle without overindulgence." Id. at 583, 792 A.2d 525. In Isaacson, we referred to the Kansas "Three Pony Rule," which states that "`no child, no matter how wealthy the parents, needs to be provided [with] more than three ponies.'" Ibid. (quoting In re Patterson, 22 Kan.App.2d 522, 920 P.2d 450, 455 (1996)). Even with high income parents, the court still must "determin[e] needs of a child in a sensible manner consistent with the best interests of the child." Isaacson, supra, 348 N.J.Super. at 584, 792 A.2d 525. "[T]he law is not offended if there is some incidental benefit to the custodial parent from increased child support payments." Ibid. While "some incidental benefit" is not offensive, "overreaching in the name of benefiting a child is." Id. at 585, 792 A.2d 525. "[A] custodial parent cannot[,] through the guise of the incidental benefits of child support[,] gain a benefit beyond that which is merely incidental to a benefit being conferred on the child." Loro v. Del Colliano, 354 N.J.Super. 212, 225-26, 806 A.2d 799 (App. Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002). That is especially true where the custodial parent is not entitled to alimony. Ibid. "The award of nonessential additions to child support requires a careful weighing and determination as to who is the primary and who is the incidental beneficiary of such support." Ibid.
Here, the parties' experts agreed the marital standard of living was approximately $1 million a year. The court found that the "reasonable current standard of living" of defendant and the two children was $630,000 a year. The court set forth all of the expenses that went into that figure, but did not distinguish defendant's expenses from those of the children's. The court stated that defendant "reported spending approximately $8,000 per month over an approximate twelve month period on the children." The court added: "The historical expenses attributed to the children, to the extent reasonable and recurring, have been reviewed and weighed to their current needs as determined by the court's analysis of the factors under N.J.S.A. 2A:34-23(b)." The basic child support amount under the guidelines was $35,984 a year. But, the court found that the children had a supplemental need of $200,000 a year, for a total of $235,984 a year.
The court did not impute income to defendant but considered the funds she would have available at the conclusion of the divorce. The court determined defendant would have $10.5 million in liquid assets to invest, which would return about $525,600 annually in gross income or $341,640 net, or $28,470 net income per month. With monthly expenses of $52,500, however, defendant had a shortfall of $24,030 per month.
Plaintiff's post-divorce income for 2006 was about $5.87 million, with "$292,000 net monthly income available for child support." The parties' combined net monthly income was $330,470, with plaintiff's income being 91% of the total and defendant's *1225 9%. Plaintiff's 91% share of the annual child support amounted to $214,745. This did not include the additional expenses for the children that plaintiff volunteered to pay: medical insurance, uncovered medical expenses, and 80% of the agreed-upon extra-curricular activities and college expenses.
Plaintiff contends that the trial court's decision was defective because it was "completely bereft of any correlation between the relevant facts and the law," and gave no explanation as to how the court arrived at the $200,000 supplemental award. Specifically, plaintiff argues that the court (1) failed to make findings concerning the reasonable needs of the children, (2) failed to explain its balancing of the reasonable needs of the children and plaintiff's right to have a say in how his children are raised, (3) failed to identify non-essential items in defendant's statement of the children's needs; and (4) failed to determine who was the primary beneficiary of the award. Plaintiff maintains that the award was a windfall to defendant, and that the judge erred in failing to impute any income to her.
"Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J.Super. 441, 443, 573 A.2d 520 (App.Div.1990). "The absence of adequate findings ... necessitates a reversal." Heinl v. Heinl, 287 N.J.Super. 337, 347, 671 A.2d 147 (App.Div.1996). We ordinarily remand to the trial court to make findings of fact if the trial court failed to do so. Barnett and Herenchak, Inc. v. State Dep't of Transp., 276 N.J.Super. 465, 473, 648 A.2d 256 (App.Div.1994).
We agree with plaintiff that the court here failed to make the specific findings of fact necessary to sustain its decision regarding the amount of supplemental child support. The court merely repeated defendant's recitation of the children's "needs" as they appeared on her case information statement (CIS) without any determination of what was essential or non-essential or any judgment regarding the accuracy or appropriateness of those needs. Expenses such as the mortgage, taxes, utilities, car expenses, and similar items benefited defendant as well as the children, but the court did not discuss what portion of those expenses was for the benefit of the children and what portion was for the benefit of defendant.
Defendant broke down some of these expenses on her CIS, attributing between one-half to two-thirds of the expenses to the children. Plaintiff's accounting expert testified, that in such cases, it is customary to attribute twenty-percent of such joint expenses to the children. While the law is not offended if defendant receives an incidental benefit, the custodial parent cannot be a primary beneficiary. Loro, supra, 354 N.J.Super. at 224-25, 806 A.2d 799. This is of special concern when, as here, the custodial parent has no right to alimony. Id. at 226, 806 A.2d 799. The trial court failed to address this very significant issue.
Moreover, the court failed to make any analysis of the reasonableness of the "needs" claimed by defendant on behalf of the twin toddlers. Although in high income families, children are entitled to the benefit of financial advantages available to them, "the custodial parent bears the burden of establishing the reasonableness of those expenses." Accardi v. Accardi, 369 N.J.Super. 75, 88, 848 A.2d 44 (App.Div.2004). Some of the expenses claimed by defendant clearly should have been deleted by the court. For example, the "children" sent their nanny and her family to Jamaica for a ten-day vacation, and gave their grandmother diamond jewelry. Defendant claimed that the twin toddlers needed nearly $27,000 a year for *1226 clothing because she dressed them in a new outfit every time they saw their father, and one of the three-year-old girls did not like to leave the house without a purse. There was no explanation as to why the children needed $30,000 worth of landscaping per year, or what was included in $3,000 for "audio visual" expenses per year. Defendant listed $36,000 a year for the children's "equipment and furnishings" without explaining what that covered. Other expenses listed in defendant's CIS should have been questioned by the court, as well, but the court made no distinction between what needs were reasonable, given the young age of the children, and what simply amounted to a "fourth pony." Nor is it possible to tell from the record whether the court "double-counted" certain expenses that appear on defendant's CIS, such as unreimbursed medical expenses, that plaintiff volunteered to pay separately.
The court failed to acknowledge that because the twins were only a few months old when the parties' separated, there was virtually no "marital standard" to ascertain the way the parties' treated the children. Defendant admitted that many of the expenses she listed for the children were incurred without plaintiff's knowledge or consent. At trial, plaintiff expressed his desire not "to spoil" the children and to teach them the value of money. Nevertheless, the court failed to address plaintiff's "legitimate right ... to determine the appropriate lifestyle of [his] child[ren]." Isaacson, supra, 348 N.J.Super. at 582, 792 A.2d 525.
Plaintiff further argues that the judge erred in failing to impute any income to defendant for child support purposes. He maintains that defendant has two college degrees, had earned $70,000 per year prior to the marriage, and admitted that she was capable of working but chose not to do so. He contends that her "voluntary decision to be unemployed is not a legitimate basis for failing to impute any income." We agree.
The "fairness of a child support award is dependent on the accurate determination of a parent's net income. If the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent[.]" Pressler, supra, Appendix IX-A to R. 5:6A at 2292.
In Caplan v. Caplan, 182 N.J. 250, 268, 864 A.2d 1108 (2005), the Court concluded "that the imputation of income to one or both parents who have voluntarily remained underemployed or unemployed, without just cause, will promote a fair and just allocation of the child support responsibility of the parents." In assessing income, however, the court must first determine whether the parent has "just cause" to be voluntarily unemployed. Ibid. "In making that decision, the court should consider the employment status and earning capacity of that parent had the family remained intact; the reason for and intent behind the voluntary underemployment or unemployment; the extent other assets are available to pay support; and the ages of the children in the parent's household as well as child-care alternatives." Ibid.; see also Pressler, supra, Appendix IX-A at 2293.
If the court finds that there is no "just cause" for the parent remaining unemployed or underemployed, the guidelines provide that income can be imputed "based on potential employment and earning capacity using the parent's work history, occupational qualifications, educational background and ... job opportunities." Pressler, supra, Appendix IX-A at 2292. The court also may impute income in accordance with the person's usual or former occupation. Ibid.
*1227 Here, the court concluded that defendant was "neither voluntarily unemployed nor underemployed" and declined to impute income to her. The court explained:
The defendant was a wife, homemaker, companion, and mother during her relationship with the plaintiff. The plaintiff did not want the defendant to be employed during their cohabitation, both before and after their marriage. The court finds the plaintiff wanted the defendant to be his companion and wife, and ultimately, the full time mother of his children. The parties' relationship was a "shared enterprise" resulting in their living together, becoming engaged and married, and wanting to have children. On the parties' tax returns the plaintiff reported ... [defendant's occupation] as homemaker.... The parties' parenting agreement recognized the defendant's parental responsibilities as the primary caretaker of the parties' children.... Under the circumstances of this case, the defendant cannot go back in time and continue her employment or develop her career as if it was 1994, the date of cohabitation, or 1999, the date the parties married, or 2004, the date the parties' twin[s] were born. The defendant testified that she will not seek employment but will raise the parties' children as the parties' intended during her pregnancy and after the birth of the children. Under those circumstances, and based on the assets and income of the parties and quality of life for the children, the court finds it would be unreasonable to impute earned employment income to the defendant.
First, we note that the parties separated when the children were a few months old, so there was virtually no history of their conduct vis-á-vis the children. Second, defendant's employment opportunities were, in all likelihood, enhanced by her celebrity marriage. There is no question that as a healthy, educated, forty-one-year old, defendant is capable of earning her own income. The court found, however, that defendant was unemployed at plaintiff's request, and had the family stayed together, she would have remained unemployed. There is insufficient evidence to support that conclusion, however. The children were quite young when the parties separated and have had nannies to care for them since they were born.
Although the court did attribute income to defendant from the interest on her investments, it failed to take into consideration the very substantial assets defendant derived from the marriage and divorce, the opportunities for employment available to her as the former wife of a celebrity and the time available to her as a result of the nannies who care for the children. In short, in the remand hearing, the court should consider all possible sources of income for defendant  earned and unearned  as well as her assets in determining her share of child support.
Accordingly, we reverse the child support award of $235,984 per year  91% of which was charged to plaintiff  and remand for the trial court to reconsider in accordance with this opinion. We further direct the trial court to reconsider the imputation of income to defendant and the percentage of child support plaintiff is obligated to pay.

B. Disability Insurance

Plaintiff argues that the judge erred in requiring him to maintain a $7.5 million disability policy, and in denying his motion for reconsideration of the issue when he advised the court that it was impossible to obtain such a policy. Defendant maintains that the disability requirement was properly imposed as a security for child support.
In its decision, the trial court stated:

*1228 The plaintiff reported in his certificate of insurance coverage that he maintains no disability coverage for total disability from injury or sickness. However, the plaintiff's contract with the New York Giants required him from 2002 through 2004 to obtain (a) term life insurance policies ... and (b) a permanent and total disability policy or policies covering injury or death. Neither party provided any evidence of disability insurance to offset any loss of earned income that may occur due to injury or sickness. As further security for payment of his child support obligation, the plaintiff shall be required to obtain disability insurance in the face amount of $7,500,000 for "permanent total disability" to offset any loss of income of [sic] earned income that may occur due to injury or sickness.
In his motion for reconsideration, plaintiff certified that he attempted to obtain a $7.5 million disability policy and was unable to do so based on his age and his prior injuries. He included a letter from an underwriter at HCC Specialty Underwriters, Inc, stating the same. The court denied plaintiff's reconsideration motion, simply stating that it was permitted to require security to protect child support. N.J.S.A. 2A:34-23.
Plaintiff argues that he should not have to maintain the disability insurance because there was no evidence at trial to support the requirement of the insurance or the amount. He further argues that the court failed to make factual findings to support its decision.
In addition to requiring plaintiff to obtain a $7.5 million disability policy, the court ordered plaintiff to maintain a $4 million life insurance policy "as reasonable and equitable security for [the children's] support and anticipated costs of higher education if the plaintiff should prematurely expire." It is illogical to require plaintiff to secure child support with a $4 million policy in the event he dies, but require $7.5 million in disability insurance if he were injured and precluded from playing football. If plaintiff were injured and unable to play football, he would be no different than any other parent who is injured or ill and unable to pursue his or her chosen profession. In such circumstances, the disabled parent would be entitled to seek a modification of child support based upon the reduction in income. Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980).
Moreover, plaintiff demonstrated that he cannot obtain disability insurance. The trial court commented that plaintiff should have addressed this issue at trial rather than in his motion for reconsideration. While raising the issue at trial would have allowed the parties to explore the issue to a greater extent, plaintiff's failure to raise it at trial does not preclude him from challenging the reasonableness of the court's requirement after it was imposed. In our view, there is insufficient evidence in the record to support the requirement of a $7.5 million disability insurance policy and, given the $4 million life insurance requirement, it is not reasonable.
We do not operate in a vacuum and we are aware that while this matter was pending, plaintiff announced that he was retiring from professional football. Plaintiff's retirement further illustrates the unreasonable requirement of the disability policy: since there was no provision in the amended judgment for securing child support when plaintiff retired, he will have to address the issue of child support as any other parent whose circumstances have changed. Lepis, supra, 83 N.J. at 146, 416 A.2d 45. If a trial court intends to secure child support pursuant to N.J.S.A. 2A:34-23, it must do so in a reasonable manner.
The disability insurance issue is now moot in this case. Accordingly, we vacate the paragraph on pages four and five of *1229 the amended judgment requiring plaintiff to "maintain disability insurance in the face amount of $7,500,000 for permanent total disability to offset any loss of the plaintiff's professional football earned income that may occur due to injury or sickness."

C. Counsel Fees

Plaintiff contends that because the parties agreed that each would pay his and her own counsel fees, the court erred by awarding defendant a total of $13,777.50 in counsel and accountant's fees as a result of the post-judgment motion for reconsideration. Plaintiff further argues that even if fees were permitted under the agreement, the judge erred in ordering plaintiff to pay defendant's fees.
After the amended judgment was entered, plaintiff moved for reconsideration and a stay of the order requiring him to pay more than $6.5 million to defendant under the terms of the pre-nuptial agreement. Defendant cross-moved for an order adjudicating plaintiff in violation of litigant's rights for failing to pay $7.7 million due under the final judgment of divorce, and for counsel fees.
Pursuant to Rule 5:3-5(c), a court may, in its discretion, award counsel fees in a matrimonial action:
In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R. 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
In this case, however, the parties' agreement stated:
In the event of an action for legal separation or dissolution, each party shall pay and be responsible for their own respective attorney's fees and costs both pending the litigation and upon completion of the actions. If either party is called upon to pay attorneys' fees or costs of the other party, the amount paid shall be charged against the Separate Property of the party whose fees were paid and will be reimbursed to the paying party.
[Emphasis added.]
In considering defendant's request for counsel fees, the court stated:
[Plaintiff] in effect, by seeking the stay ... would have the defendant use her [principal] reducing her investment income as indicated in her reply cross motion with the information with regard to her investment, and how it would be reduced, to pay her attorney's fees, such would result again in irreparable financial hardship to this defendant, as indicated under the [c]ourt's rulings as to her obligation as to her financial circumstances, and her obligation to pay her fair share of maintaining her two children as the parent of primary residence.
The court then concluded that plaintiff made the reconsideration motion in bad faith, warranting an award of counsel fees to defendant. When reminded by plaintiff's counsel of the parties' pre-nuptial agreement regarding counsel fees, the court stated: "I don't believe that it applies to a post-award matter." In a supplemental order dated March 22, 2007, the court ordered plaintiff to pay defendant accounting fees and counsel fees totaling $13,777.50.
*1230 We will disturb a trial court's determination on counsel fees only on the "rarest occasion," and then only because of clear abuse of discretion. Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995). We find that the court did, indeed, abuse its discretion. In our view, the language in the pre-nuptial agreement  "both pending and upon completion of the actions"  includes motions for reconsideration. The amended final judgment is not "final" in the sense that it cannot be enforced while the matter is still under reconsideration or stayed pending appeal.
Plaintiff further argues that even if the agreement did not preclude the award of fees, the court improperly assessed fees against him. He maintains that his motion was not in bad faith as evidenced by our grant of a stay pending appeal. We agree. Our decision here further supports plaintiff's argument that his motion for reconsideration was made in good faith.
Accordingly, we reverse and vacate paragraphs eleven and twelve of the order entered on March 22, 2007 directing plaintiff to pay defendant's accountant and counsel fees totaling $13,777.50.

D. Remand to a Different Judge

In his final argument, plaintiff requests a remand to a different judge based upon the trial judge's bias. We have carefully considered the extensive record in this matter and find no evidence of bias. Bias cannot be inferred from adverse rulings against a party. Matthews v. Deane, 196 N.J.Super. 441, 444-47, 483 A.2d 232 (Ch.Div.1984). We find no reason to remand the matter to a different judge. R. 2:11-3(e)(1)(E).
To summarize our decision: (1) the paragraph in the amended judgment directing plaintiff to pay "child support in the sum of $214,745 annually, payable $8,948 on the first and $8,948 on the fifteenth of each month" is reversed and remanded for reconsideration in accordance with this opinion; (2) the paragraph requiring plaintiff to maintain a $7.5 million disability insurance policy is vacated; and (3) paragraphs eleven and twelve of the March 22, 2007 order relating to accountant and counsel fees are vacated.
Reversed in part; remanded in part.