**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2039-14T3
              A-5032-14T3
              A-5033-14T3
              A-5034-14T3

MICHELE KRIEGMAN,

    Plaintiff-Appellant,

v.

TARA SAE-CHIN,

    Defendant-Respondent.

_____

Submitted September 27, 2016 — Decided August 16, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Morris County,
Docket No. FM-14-136-97.

Michele Kriegman, appellant pro se.

Respondent Tara Sae-Chin has not filed a
brief.

PER CURIAM

    Plaintiff filed appeals from four post-judgment child support

orders, dated October 15, 2014; January 23, 2015; March 23, 2015;

and May 21, 2015. We have consolidated the appeals from the three

orders entered in 2015 and consolidate plaintiff's appeal from the October 2014 order for the purpose of writing a single opinion. For the reasons that follow, we affirm in part and reverse in part, and conclude plaintiff's appeal from the May 2015 order is moot.

## I.

The parties have engaged in robust and extensive litigation since their divorce in 1998. They entered into a property settlement agreement (PSA) that governed their support obligations for their three children and custody. Originally plaintiff had sole legal and residential custody of all three children, Abigail, Elanya and Derek.

The PSA provides, in relevant part, that a child is deemed emancipated upon:

> [t]he child reaching the age of twenty-two years or the completion of four continuous academic years of college education, whichever last occurs provided that the child takes no more than one year from graduation from high school prior to entry into college . . . .

Abigail graduated from college in May 2009. Elanya graduated from college in May 2013 and Derek was scheduled to graduate from college in May 2015.

There were several orders entered by the trial court, including a consent order, the validity of which are not in

dispute, that modify the parties' child support obligations under the PSA.

The March 2005 consent order designated defendant as having residential custody of Abigail and reduced his child support obligation. Plaintiff retained residential custody of Elanya and Derek. The order also directed the appointment of a certified public account (CPA) and identified the reason for his appointment and the scope of his assignment:

> The parties have been unable to agree upon the arrears owed to one another, if any, relative to the unreimbursed medical expenses, with claims for the children, through December 31, 2004. The parties appoint Barry Pierce, C.P.A. as a jointly appointed arbitrator to determine what amount, if any, unreimbursed medical expenses are owed to one another.

Based upon their 2005 income, Pierce determined the appropriate allocation for expenses to be: plaintiff 18%/defendant 82%. Pursuant to the final judgment of divorce, this percentage was used to divide the cost of summer camp in 2006.

An October 2006 order established defendant's child support obligation while Abigail was away from home, and defined certain terms in the PSA.

Among other things, the January 18, 2013 order (1) emancipated Abigail and terminated child support for her by consent of the parties, (2) ordered the parties to set up an escrow account to

fund college expenses as a percentage of their combined income at an amount/percentage to be determined, and (3) awarded plaintiff $2,451 for medical expenses and $2,472.30 for summer camp expenses to be paid by defendant.

On April 11, 2014, the court entered an order declaring Elanya emancipated by consent of the parties as of June 1, 2013. Defendant's child support payments were reduced. Furthermore, the order reflected the court's determination that the parties were to split Derek's college expenses, with plaintiff paying thirty-five percent (35%) and defendant paying sixty-five percent (65%). Plaintiff was ordered to pay $500 and defendant to pay $927 of the then outstanding balance of Derek's tuition.

Thereafter, the trial court ordered a plenary hearing to resolve "a multitude of factual disputes" concerning child-related expenses. The first of the orders challenged on appeal constituted the trial judge's decision on the claims litigated in the plenary hearing. The remaining orders appealed from followed.

## II.

In reviewing orders regarding child support and related matters, we "examine whether, given the facts, the trial judge abused his or her discretion." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). Trial courts have "substantial discretion" in making such determinations. Foust v. Glaser, 340

N.J. Super. 312, 315 (App. Div. 2001). This is particularly true in the adjudication of matrimonial matters, where the evidence is primarily testimonial, "because the trial judge has 'a feel of the case' and is in the best position to 'make first-hand credibility judgments about the witnesses who appear on the stand.'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Therefore, when this court "concludes there is satisfactory evidentiary support for the trial court's findings, its task is complete and it should not disturb the result." Ibid. (quoting Beck v. Beck, 86 N.J. 480, 496 (1981) (internal quotation marks omitted).

However, reversal is appropriate when "the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). In other words, a trial court will have abused its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Jacoby, supra, 427 N.J. Super. at 116 (citations and internal quotation marks omitted).

While deference is accorded to the trial court as to fact-finding, its "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). As always, questions of law are reviewed de novo. Dep't of Envtl. Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007).

Finally, Rule 1:7-4 requires judges trying issues without a jury to include the findings of facts and conclusions of law in each determination they make. Compliance with Rule 1:7-4 is crucial because "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

This court has firmly established that "[n]aked conclusions are insufficient" and judges "must fully and specifically articulate findings of fact and conclusions of law." Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) (citing R. 1:7-4). In short, a failure to comply with Rule 1:7-4 ordinarily results in remand. See Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (reversing and remanding a trial judge's child support award because it "failed to make the specific

findings of fact necessary to sustain its decision regarding the amount" contained in the award).

We turn to review the challenged orders and the trial court's reasoning as to each.

### III.

The opinion accompanying the October 15, 2014 order states the court awarded plaintiff $23,441.79 on their children's tuition and college expenses, Abigail's travel expenses, Derek's bar mitzvah expenses, and prior awards entered by the court. Plaintiff was ordered to pay Villanova, Derek's university, $6,277.95 for his tuition and late fees. Plaintiff's claims for withheld child support payments resulting from an incorrect calculation of Abigail's emancipation date and defendant's overnight parenting time were denied. The trial judge also denied some of plaintiff's claims for tuition, college expenses and all of her claims for other non-college/non-child support expenses. Defendant was awarded $36,958.24 for the overpayment of Elanya's child support and Derek's college tuition. After offsetting the award of $23,441.79 to plaintiff against an award of $36,958.24 to defendant, the trial judge's calculation resulted in an order that provide in pertinent part:

> 1. The Plaintiff shall reimburse the Defendant the sum of $13,516.45 within forty-five (45) days.

> 2. The Plaintiff shall take immediate steps to pay the balance of Derek's college tuition for Villanova of $6,277.95 plus any late fees ($150).

Plaintiff challenges the trial judge's failure to retroactively emancipate Abigail and recalculate support obligations accordingly and argues his factual determinations regarding tuition, college and other expenses lack support in the record. She further contends the trial judge: used the wrong percentages to calculate defendant's obligation for Derek's bar mitzvah, omitted an award to her of expenses defendant agreed to pay, failed to apply a "reasonableness standard" in determining whether defendant should pay for certain expenses and erred in failing to credit her for defendant's unused overnight visitation.[1] We address each of these arguments in turn.

<u>Abigail's emancipation</u>

Plaintiff argues the trial judge used an inconsistent methodology to determine the emancipation dates for Abigail and Elanya, resulting in an unfair advantage to defendant. She asserts that Abigail graduated from college before June 1, 2009 and that

---

[1] Plaintiff made other claims, that are not in dispute on appeal, of (1) $3,413.59 for Elanya and Derek's automobile expenses; (2) $10,000 tax credit plaintiff claimed defendant improperly received for claiming Elanya as a dependent; (3) $2,084.58 for Abigail's post-graduate courses; (4) $4,923.30 previously ordered by the court; and (5) $25,000 for counsel fees reimbursements.

"due to an oversight, she was not declared emancipated until" an order dated January 18, 2013. An order had been entered in April 2014 that declared Elanya emancipated, retroactively, as of June 1, 2013 and directed that child support be recalculated accordingly.[2]

Plaintiff asserts she asked for a corresponding retroactive declaration of Abigail's emancipation and recalculation of child support credits. She also contends that defendant received a credit for Abigail for 185 weeks after her "de facto emancipation," and that this "resulted in improperly reduced child support" to plaintiff for the two younger children. She does not, however, provide citations to the record to support her statement that she made such a request or her conclusion that her child support was "improperly reduced" as a result.

The trial judge considered plaintiff's request as both a claim for "back child support for Abigail" and a claim for reimbursement or credit for the child support defendant did not have to pay for Abigail. The trial judge observed that plaintiff did not "truly have an affirmative claim for payment of child support. Her claim is that Defendant benefited financially by not having to pay child support for Abigail although Plaintiff did not

---

[2] Plaintiff states she consented to the retroactive emancipation and recalculation.

pay child support either." He concluded plaintiff's claim had been waived because Abigail was declared emancipated by consent in January 2013.

Whether plaintiff has stated a claim for the payment of child support or waived such a claim are questions of law, subject to de novo review. See Reese, supra, 430 N.J. Super. at 568 (citing Dep't of Envtl. Prot., supra, 395 N.J. Super. at 601). Although we do not condone plaintiff's belated assertion of her claim, which resulted in unnecessary piecemeal litigation, we do not conclude her delay foreclosed consideration of her claim.

Plaintiff provides the following rationale for her claim that she is entitled to $49,500 from defendant. When Abigail went to live with defendant, the March 2005 order lowered defendant's child support obligation by $315 per week. When Abigail went away to college, child support was modified, reducing the amount defendant was credited for his support of Abigail by $45 per week. As a result, she contends she was entitled to recover the $270 weekly offset to defendant's support obligation for the 185 weeks from Abigail's graduation until the January 2013 order.

The premise for plaintiff's argument is that defendant's child support payment to her would have automatically reverted to his child support obligation prior to March 2005. This overly simplistic premise is flawed. In essence, plaintiff requested a

change in child support based on the change in circumstances caused by Abigail's emancipation. Yet, her request is unsupported by the documentation required to obtain such relief. See R. 5:5-4(a). Her premise also ignores the fact that in the intervening years there were other changes in the parties' circumstances, including the younger children's attendance at college, that would have an impact on support obligations. In short, the record does not support plaintiff's contention that she was entitled to an automatic retroactive increase of the claimed amount based upon Abigail's belated emancipation.

Nonetheless, because the trial judge dismissed plaintiff's claim on waiver grounds, the record fails to show that he considered the economic consequences of Abigail's retroactive emancipation for the parties' obligations and credits. Therefore, a remand is necessary for the trial judge to determine what credits, if any, are due plaintiff based upon the retroactive emancipation of Abigail.

### Tuition and College expenses for Derek and Elanya

Plaintiff argues the trial judge erred in his determination of the parties' obligations and credits for payments made for tuition and college-related expenses for Derek and Elanya. She contends the judge's determinations lack support in the record, that the judge erred in calculating the award and overlooked

11

relevant evidence regarding her payment of expenses for Elanya and Derek. The trial judge's failure to provide an adequate factual basis and explanation for his determinations as well as irreconcilable discrepancies in his characterizations of the sums at issue, preclude a meaningful analysis of plaintiff's arguments.

As a preliminary matter, we note the following discrepancies in the amounts the trial judge attributed to plaintiff's claims in his initial breakdown and his later listing of plaintiff's claims for reimbursements, and, for convenience, list the disposition of those claims.

| Breakdown | | "Claims" | Award |
|---|---|---|---|
| <u>Elanya</u> | | | |
| $7,071.36 | tuition | $11,176.21 | $7.071.36 |
| $13,598.83 | non-tuition college expenses | $11,561.98 | $3,800.15 |
| $2,976.30 | non-college expenses | $ 3,083.32 | Denied |
| <u>Derek</u> | | | |
| $1,361.10 | non-tuition college expenses | $ 2,548.65 | $1,115[3] |
| $3,167.68 | non-college expenses | $ 2,981.89 | Denied |

---

[3] We infer this amount was credited to plaintiff because the statement of reasons says, "Defendant accepts liability for $1,115 sought for Derek's college related expenses."

The disparity between the two iterations of plaintiff's claims is neither explained nor resolved in the judge's statement of reasons. The following constitutes the portion of the trial judge's October 2014 opinion that addresses the parties' awards and obligations for their children's college expenses:

> Defendant accepts liability for $1,115 sought for Derek's college related expenses. . . . Plaintiff has established tuition payments for Elanya entitling her to reimbursement of $7,071.36. (P-2a). Plaintiff has established college expenses for Elanya entitled her to reimbursement of $3,800.15. (P-11). . . .
>
> Defendant has established that he has paid his portion of Derek's tuition as required of $17,016.38. Most recently Defendant paid $11,659.05 towards Derek's $17,937 tuition bill and the Plaintiff has failed to pay. Plaintiff shall make immediate payment of $6,277.95 plus any late fees ($150) to Villanova to protect Derek's right to uninterrupted education. Defendant has also established payment of $77,000 towards Abigail's tuition. (D-2). Plaintiff therefore owes him $26,950.

As is evident from this excerpt, the trial judge provided no reasoning as to how he determined the amounts owed on each claim. Because his citations to trial exhibits (i.e., "P-2a" and "D-2") lack any description of their contents, it is not possible to determine what support, if any, exists in the record for his conclusions. For example, the trial judge acknowledged that plaintiff sought a $11,561.98 reimbursement for Elanya's college

expenses. He awarded her approximately one-third of that amount, but provides no explanation as to why the award was reduced so drastically. The sweeping statement, "Plaintiff has failed to prove by a preponderance the balance of her claims," fails to satisfy the requirement of Rule 1:7-4. See, e.g., Strahan, supra, 402 N.J. Super. at 310.

Plaintiff argues the trial judge omitted or overlooked exhibits that documented tuition expenses for Elanya. She asserts she supported her claim regarding Elanya's college expenses with $12,165.47 in documented expenses and that the trial judge overlooked two exhibits in awarding only $3,800.15. Plaintiff argues the exhibit cited by the judge was only one of three exhibits that documented her payment of college expenses for Elanya. Because the trial judge provided no explanation for how he arrived at the amount awarded or why the other sums plaintiff asserts were documented were excluded, we cannot determine whether her argument has merit.

Plaintiff also argues the trial judge overlooked exhibits relating to her claim for Derek's college-related expenses. She contends she submitted a claim, supported by documented expenses, for $3,178.52. Although the judge initially listed this claim as $3,167.68, her claim for reimbursement is later listed as "$2,548.65." The only reference in the statement of reasons to

the trial judge's disposition of this claim is: "Defendant accepts liability for $1,115 sought for Derek's college related expenses." Again, this is insufficient to permit appellate review.

The trial judge denied what he termed "non-college expenses" for both Elanya and Derek, followed by the statement, "Plaintiff should have sought and obtained the consent of the Defendant as per the PSA and the 2005 Consent Order." The trial judge was required to make findings of fact regarding which of plaintiff's expenditures were appropriately considered "college costs and expenses," and, thus, subject to reimbursement by defendant.[4] The October 2006 order defined the term "college costs and expenses" in the PSA as "tuition, room and board or rent if living off campus, books, school fees, travel to and from school for up to four times per year." However, the trial judge merely stated a series of dollar amounts without making the necessary preliminary factual determinations of whether plaintiff's expenses fell inside or outside the definition of "college costs and expenses." As a result, we cannot determine whether he correctly excluded "non-college expenses" for Elanya and Derek.

---

[4] We note that plaintiff has not appealed the court's denial of her claim for automobile expenses for Elanya and Derek totaling $3,413.59.

The trial judge also failed to explain how he apportioned the college expense obligations between the parties. This issue is also governed by the PSA, which states the parties shall "share the expense of each child's college education in proportion to their respective financial circumstances at the time such children are in college." The term "financial circumstances" is defined in the October 2006 order as "income, assets, expenses, and the overall ability of each party to pay." Although crucial to properly allocating the parties' obligations, the trial judge made no factual determinations as to the parties' financial circumstances at the time Elanya or Abigail were in college.

There was an order in place that determined the parties' obligations for Derek's tuition. As noted, the October 15, 2014 order required plaintiff to pay $6,277.95 in tuition plus late fees for Derek's tuition. The reasoning provided for this order is:

> Defendant has established that he has paid his portion of Derek's tuition as required of $17,016.38. Most recently Defendant paid $11,659.05 towards Derek's $17,937 tuition bill and the Plaintiff has failed to pay.

Although the April 2014 order established the percentages of each party's responsibility, this reasoning is inadequate to explain what proofs the judge relied upon to determine these obligations.

A-2039-14T3

Such "naked conclusions" do not satisfy the Rule 1:7-4 requirement and are "a disservice to the litigants, the attorneys, and the appellate court." Heinl, supra, 287 N.J. Super. at 347 (quoting Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)); see also Curtis v. Finneran, 83 N.J. 563, 570 (1980). As a result of the failure to provide such explanations, we are unable to determine the merit of plaintiff's arguments. Therefore, the trial judge's determinations of credits due and unmet obligations of the parties for Derek's and Elanya's tuition and college expenses must be remanded for reconsideration to enable the court to make the necessary findings of fact and conclusions of law required by Rule 1:7-4. See Strahan, supra, 402 N.J. Super. at 310; Barnett & Herenchak, Inc. v. N.J. Dep't of Transp., 276 N.J. Super. 465, 471 (App. Div. 1994).

### Abigail's tuition

The trial judge's calculation that defendant was due an award of $36,958.24 included his consideration of defendant's claim for contribution toward Abigail's tuition. He stated,

> Defendant has also established payment of $77,000 towards Abigail's tuition (D-2). Plaintiff therefore owes him $26,950.

Plaintiff argues the trial judge erred in determining she owed money for Abigail's college tuition. She contends that her father paid 100% of her obligation for Abigail's tuition. In the

alternative, she states the percentage of the cost allocated to her should be 18%, the percentage determined by the CPA in 2006.

To support her assertion that her tuition obligation was fully satisfied, plaintiff cites exhibits that reflect her father's voluntary assumption of her obligation for college expenses and statement in August 2009 that he and defendant had paid all of Abigail's college expenses. These exhibits relate to her father's promises to her but fail to support her contention the trial judge ignored proofs that established she had fulfilled her obligation for Abigail's college expenses.

The trial judge's determination of plaintiff's obligation suffers, however, from failures to identify the factual basis for the award, what percentage of the expense was allocated to plaintiff and the basis for allocating that percentage. Abigail graduated in 2009, five years before the April 11, 2014 order allocated responsibility for Derek's college expenses at 35% to plaintiff and 65% to defendant. The trial judge did not explain why this percentage was appropriate when, in 2006, the CPA determined plaintiff should only be required to shoulder an 18% obligation based on 2005 income.

### Derek's bar mitzvah

Plaintiff further argues the trial judge made a mathematical error in calculating defendant's obligation for Derek's bar

mitzvah by using the 65%/35% split based upon the percentages used in an April 11, 2014 order to allocate expenses for Derek's college expenses. The exhibits reflect that the bar mitzvah occurred in 2005. Plaintiff contends the judge should have employed an 82%/18% allocation, using the percentages determined by the CPA based on the parties' 2005 income, resulting in an award of $5,361.57, a sum $1,111.57 more than the amount in the judgment.

Plaintiff is correct that the court-appointed CPA determined that the percentage of income for 2005 was eighty-two percent (82%) for defendant and eighteen percent (18%) for plaintiff. However, this apportionment was made specifically for the purpose of allocating responsibility for unreimbursed medical expenses as instructed in the March 2005 consent order and was also used for the division of camp costs. It was not made for the purpose of allocating the cost of Derek's bar mitzvah. Therefore, it is not conclusive, as plaintiff suggests, that the correct apportionment should have been an eighteen/eight-two percent (18%/82%) split. However, it is a fair benchmark for the allocation of responsibility for an expense incurred in 2005.

Although the judge did not explain why or how he determined that plaintiff was entitled to a sixty-five percent (65%) reimbursement from defendant, it appears he employed the allocation set forth in the April 2014 order for Derek's college

A-2039-14T3

expenses.  That allocation differs sharply from the determination by the court-appointed CPA as to the parties' respective incomes in 2005, the time when the bar mitzvah expenses were incurred.  It was incumbent upon the judge to explain why it was appropriate to use a formula — devised for an entirely different purpose nine years later — that doubled plaintiff's responsibility.  Again, his failure to support his determination with adequate findings of facts or conclusions of law is counter to Rule 1:7-4, and this court is "left to conjecture as to what the judge may have had in mind."  Salch, supra, 240 N.J. Super. at 443.

We therefore conclude the trial judge's determinations regarding the parties' obligations for Derek's bar mitzvah expenses must be reversed and the issue remanded for reconsideration to enable the court to make the necessary findings of facts or conclusions of law as required by Rule 1:7-4.  Strahan, supra, 402 N.J. Super. at 310; Barnett & Herenchak, Inc., supra, 276 N.J. Super. at 471.

### Obligations defendant agreed to pay

Plaintiff next argues the trial judge failed to allocate a share of certain expenses to defendant that he agreed to assume during the trial, i.e., "the software [Derek] had to buy for his school," "AP exams," and expenses for the "Scholastic Aptitude Test."

In his statement of reasons, the trial judge noted defendant "accepts liability for $1,115 sought for Derek's college related expenses. (P-10)" and then states "[n]on-college/non-child support related expenses are denied for both Elanya and Derek." Because there is no description of P-10 or other breakdown of the expenses that were included in the award or disallowed, it is impossible to discern whether the specific expenses that defendant agreed to contribute to are included in the award.

<u>Denial of claims to which defendant did not consent</u>

Paragraph 15 of an order dated March 28, 2005, states:

> The parties agree to consult with one another in advance on all issues related to the health, welfare and education of the children, including extracurricular activities and extraordinary expenses. Neither party may incur any such extraordinary expenses without the other's prior written consent (via e-mail). Neither party shall unreasonably withhold their consent. In the event the parties cannot agree as to a particular issue or activity, the parties shall submit same to the therapeutic mediator.

Plaintiff contends the trial judge failed to apply this reasonableness standard to certain documented expenses and that, based upon an entirely different order (August 20, 2001) and topic (camp), she had the ultimate decision-making power. She contends the trial judge gave defendant "veto" power over whether he should contribute to "$9,730.87 for non-college/non-child support

expenses for the two younger children." Plaintiff concedes that mediation was not sought to resolve any dispute regarding these expenses. We recognize that plaintiff is self-represented and have attempted to decipher her argument. However, we are unable to discern exactly what expenses plaintiff claims defendant unreasonably withheld his consent to. As a result, she has failed to show that the trial judge abused his discretion in denying her the extent of the credit she claims she was entitled to receive.

<u>Credit for overnight visitation not exercised</u>

Plaintiff argues the trial judge failed to address the "issue of adjusting 36% credit to Defendant for overnights for Elanya and Derek." The trial judge's opinion states plaintiff "testified that she was entitled to $16,737.60 because the Defendant received credits against his child support obligation for overnights that he did not exercise." Plaintiff argues the trial judge misinterpreted her claim, thinking it related to Abigail when, in fact, it related to the two younger children.

There is, however, no further discussion of this specific claim in the statement of reasons. Although the trial judge included the sentence, "[i]t is important to note that the Plaintiff has failed to prove by a preponderance the balance of her claims," that appears after a discussion of specific claims for reimbursements. We cannot discern whether the trial judge

A-2039-14T3

decided a claim he acknowledged plaintiff had made or what reasons existed for a decision.

Plaintiff argues she is entitled to the credit defendant received toward his child support obligation for Elanya and Derek for unexercised overnight parenting time. Plaintiff points to the Child Support Guidelines Shared Payment Worksheet produced in March 2005 (Guidelines Worksheet), which reflects that defendant's child support obligation was calculated based on the fact defendant would have Elanya and Derek overnight roughly thirty-six percent (36%) of the year. Plaintiff claims defendant "ceased all overnights in February 2013." According to plaintiff, because the parenting time actually exercised by defendant was not reflected in calculating his child support obligation between February 1, 2013 and June 1, 2015 (the date plaintiff claims Derek became emancipated), she is entitled to $8,218.40 to reimburse her for the credit defendant received during that time.

The trial judge denied plaintiff's claim for child support resulting from unexercised parenting time on the basis that she waived her claim because she did not raise it "well before the trial." As discussed above, a parent cannot waive a claim to child support, even due to the parent's own "negligence, purposeful delay or obstinacy." L.V. v. R.S., 347 N.J. Super. 33, 40 (App. Div. 2002); see also Colca v. Anson, 413 N.J. Super. 405, 421

(App. Div. 2010). Therefore, as a matter of law, the trial judge's determination that plaintiff waived her claim is unfounded.

Where there is a fair and equitable divorce settlement agreement between the parties that governs the allocation of child support obligations, courts are required to enforce such agreements in adjudicating child support disputes between the parties. See O.P. v. L.G.-P., 440 N.J. Super. 146, 156 (App. Div. 2015); see also Konzelman v. Konzelman, 158 N.J. 185, 194 (1999).

According to the PSA, when plaintiff had legal and physical custody of all three children, defendant's child support obligation was $750 per week. However, nothing in the PSA or in any post-judgment order reflects an agreement to modify child support obligations based upon unexercised parenting time.

In the absence of any agreement between the parties to modify their child support obligations in the event either parent ceased overnight parenting time with their children, plaintiff lacks legal support for her claim. Therefore, we affirm the denial of this claim, despite the erroneous ground that was the basis of the trial judge's decision. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) ("[A]ppeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion.").

As a result of the consolidation of her appeals, plaintiff filed a single brief that incorporated her arguments regarding the orders entered in January, March and May 2015, which we now address.

Plaintiff filed a motion for a stay of the judgment entered October 15, 2014 pending appeal. Defendant filed a cross-motion for enforcement of the October 2014 order, asking the court to compel plaintiff to reimburse him $13,516.45, to compel plaintiff to pay Derek's fall tuition and late fees ($6,277.95 + $150) and his spring tuition, and to order probation to suspend his wage garnishment to offset the credits due him.[5]

The trial judge denied plaintiff's motion and granted defendant's motion by order entered on January 23, 2015, which stated in pertinent part:

> The Defendant's cross motion for enforcement of the provisions of the October 15, 2014 order is granted. The probation department is directed to halt the wage garnishment against the Defendant until such time as the sum of $19,944.40 is recouped. In the event Plaintiff makes direct payment to the Defendant, Defendant shall as [sic] advise probation and cooperate in the processing of the probation account.

---

[5] Defendant's cross-motion is not included in the record provided to us. We rely upon the trial judge's description of the relief sought included in his written statement of reasons.

The judge entered a Uniform Summary Support Order (USSO) that directed the deduction of $205 per week "from support sums paid by the defendant on behalf of Derek of $19,944.40." The USSO also directed, "Order of Support is hereby TERMINATED effective 10/14/2014 as TO DEREK." Based upon the judge's description of the relief sought by defendant, this was not requested. There is no explanation provided in the written statement of reasons or on the USSO for the termination of child support.

The trial judge entered another order, dated March 25, 2015, which amended the January 2015 order, stating:

> This Order will amend the Order dated 1/23/2015. Derek will be emancipated effective 10/14/2014 and the Child Support obligation is terminated. There is an additional overpayment of $4627.14 as a result of this emancipation . . . . Probation is to close its case.

Again, there is no statement of reasons given for the termination of child support for Derek or the "additional overpayment of $4627.14."

Plaintiff argues the trial judge erred in retroactively emancipating Derek, effective October 14, 2014, and awarding defendant $4,627.14 for overpaid child support. She points out that, according to the PSA, Derek should have been considered emancipated as of May 16, 2015, his expected date of graduation. Thus, plaintiff argues "the amount of $4,627.14 should not be

taken from Plaintiff or if already taken relief in this amount is sought."

As defined in the PSA, emancipation could occur upon the later of the child turning twenty-two or completing "four continuous academic years of college education . . . provided that the child takes no more than one year from graduation from high school prior to entry into college." The record fails to show that defendant ever sought to have Derek declared emancipated or that emancipation was appropriate based on any circumstances in the case. To the contrary, it appears that Derek was scheduled to complete his college education in the spring of 2015. Therefore, pursuant to the terms of the PSA, he would not be emancipated as of October 2014.

Thus, the trial judge's determinations, emancipating Derek and terminating child support, not only lack any reasonable explanation, they are at odds with the relevant term of the PSA. The orders emancipating Derek as of October 14, 2014 and terminating child support are reversed.

V.

The final order that is the subject of this appeal, dated May 21, 2015, was entered by a different judge on defendant's motion

to enforce litigant's rights and plaintiff's cross-motion for a stay of judgment pending appeal.[6]

The order stated, in pertinent part:

> 1. Plaintiff's request for a stay of the October 15, 2014 [order] is DENIED without prejudice;
>
> 2. Defendant's request for the issuance of an arrest warrant is DENIED without prejudice;
>
> 3. The Court shall modify the Court Order of October 15, 2014 to allow Plaintiff to pay the sum of $13,516.45 within six months of this Order. If Plaintiff fails to comply with the Court's Order, she may be subject to economic sanctions;
>
> 4. Any other request not mentioned above is DENIED without prejudice.

In light of our disposition of plaintiff's appeals from the preceding orders, her appeal from the provisions of this order that affect her is now moot.

In sum, we affirm the trial court's decisions: to deny plaintiff credit for parenting time not exercised by defendant and to deny plaintiff's claim based on expenses for which she asserted defendant had unreasonably withheld his consent. We reverse the trial court's orders emancipating Derek as of October 2014 and terminating child support. As to the following issues, we reverse

---

[6] Plaintiff also asked the court to require defendant to reimburse Derek the sum of $12,670.90 for the fall 2014 and spring 2015 college tuition fees.

and remand for further proceedings consistent with this opinion and for the judge to comply with Rule 1:7-4 as to each determination:

1. the amount of credits, if any, due to plaintiff as a result of Abigail's retroactive emancipation;

2. the amount of credits due and unmet obligations of the parties for Derek's and Elanya's tuition and college expenses;

3. the parties' respective obligations for Abigail's tuition, including an identification of the factual basis for the award, what percentage of the expense was allocated to plaintiff and the basis for allocating that percentage;

4. the determination of the appropriate allocation of obligations for Derek's bar mitzvah expenses;

5. the determination of obligations defendant agreed to pay.

Affirmed in part, reversed in part. The appeal of the May 2015 order is moot. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2039-14T3