**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1853-23

ANN MINZNER-CONLEY,

    Plaintiff-Respondent,

v.

DANIEL CONLEY,

    Defendant-Appellant.

_____

Submitted February 26, 2025 – Decided April 16, 2025

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0800-20.

Charles Brumlik, attorney for appellant.

The Hill Firm, LLC, attorney for respondent (Bilal Hill, on the brief).

PER CURIAM

In this post-judgment matrimonial proceeding, defendant appeals from the January 22, 2024 order awarding plaintiff $5,885 in counsel fees for her

counsel's work in defending and preparing motions to enforce litigants' rights. Because we discern no abuse of discretion in the order, we affirm.

The parties were divorced in 2022. The Judgment of Divorce incorporated a Marital Settlement Agreement (MSA), under which defendant retained possession of the marital residence. Plaintiff was permitted access to the home to retrieve her family's furniture as well as her clothing and personal belongings. The parties were to agree to a twelve-hour window in which plaintiff could "go through [defendant's] numerous piles of papers stored throughout the home, in attics and storage sheds to retrieve her personal papers and those of significance to the children."[1] Plaintiff was to give defendant forty-eight hours' notice of her arrival and the collection of belongings was to take place within sixty days of the MSA.

Plaintiff came to the home the day after the divorce was finalized. However, she alleges she was forced to leave due to defendant's disruptive actions and threats, and she filed an application for, and received, a temporary restraining order (TRO). Defendant subsequently obtained a TRO against plaintiff. After a trial on both orders, they were dismissed in June 2022.

---

[1] The parties' children were emancipated at the time of the divorce.

In January 2023, the parties entered into a consent order regarding the logistics of plaintiff retrieving her belongings. They agreed plaintiff could return to the house for three three-hour visits to collect her personal items. In exchange, plaintiff would pay defendant the monies she owed him under the MSA, including unpaid alimony payments.

In October 2023, defendant moved to enforce litigant's rights and plaintiff responded with a cross-motion regarding the issues of alimony payments and retrieval of belongings. The court instructed counsel to confer, and a settlement of the issues was later placed on the record.

At the time, plaintiff owed defendant $23,850 in alimony payments. She agreed to pay $15,400 within thirty days and the remaining $8,450 after she finished collecting her items from the marital home. Plaintiff was accorded six hours to go into the home on a specific date. Defendant would not be present during the visit but an agreed-upon third party would supervise the process. Defendant would have an opportunity to see what plaintiff intended to take before the items left the house.

However, when the parties attempted to memorialize the oral agreement into writing, they no longer agreed on the terms of the agreement. Thereafter,

A-1853-23

defendant moved again to enforce litigant's rights and plaintiff cross-moved for the same relief.

During oral argument on the motions, counsel again came to an agreement. Plaintiff would arrive at the house at a certain time and date accompanied by an agreed-upon third person and spend six hours retrieving her belongings. The court ordered defendant to sit in the courtroom for those six hours.

The court denied defendant's motion and granted plaintiff counsel fees. Although the court did not refer to Rule 5:3-5(c)[2] or Rule 4:42-9, it mentioned the Rule 5:3-5(c) factors and determined plaintiff was entitled to $5,885 for fees incurred in defending the motions and presenting her own applications. The court applied the counsel fee award as a credit against the monies owed to defendant for the unpaid alimony.

On appeal, defendant contends the counsel fee was an inappropriate sanction and the court failed to comply with its obligations under the Judicial Canons and act as an "independent neutral party."

---

[2] The court referenced Rule 1:3-5(c). We presume it misspoke since the court then discussed the Rule 5:3-5(c) factors.

A-1853-23

A court's decision to award counsel fees is within "the sound discretion of the trial court."  Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021). We will only disturb the trial court's decision to award counsel fees on the rarest of occasions and only where the abuse of discretion is clear.  Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008).  "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'"  Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021) (alteration in original) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015)).

A party in a family action must support its counsel fee application with "an affidavit of services addressing the factors enumerated by RPC 1.5(a)[,] . . . [and] a recitation of other factors pertinent in the evaluation of the services rendered."  R. 4:42-9(b).  "In a family action, a fee allowance . . . on final determination may be made pursuant to [Rule] 5:3-5(c)."  R. 4:42-9(a)(1).

Rule 5:3-5(c) establishes factors for a court to consider in issuing a counsel fee award, including:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions

5

advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Here, the court analyzed the Rule 5:3-5(c) factors along with the RPC 1.5(a) elements. The court found defendant's motion was frivolous and filed in bad faith. Plaintiff sought fees she incurred for responding to the meritless pleading. The court's $5,885 award was for those counsel fees—it was not a sanction. The trial court conducted an analysis under the applicable rules and made an appropriate fee award based on the record. We are satisfied the court properly exercised its discretion in awarding plaintiff counsel fees.

Defendant also challenges the court's compliance with Judicial Canon 3A(3), referencing the court's clearly expressed anger, and bias against counsel and defendant, and disparagement of counsel during the hearing in the presence of opposing counsel and clients.

The court started the oral argument by asking whether defense counsel was "a litigator," to which counsel replied he was a patent attorney and, as a friend of the parties, he was representing defendant pro bono and attempting to help the parties "move on." Nevertheless, the court criticized counsel for his

6

preparation of the brief and stated he had wasted the court's time. The court then stated:

> There's a look of concern on your face and I . . . want to tell you that I'm glad, because I think you . . . should have a look of concern. I probably have a look of concern on my face because I'm concerned. Very. I'm afraid, I'm afraid, [defendant's counsel,] to tell you that it doesn't seem like you know what you're doing.
>
> . . . .
>
> And that's . . . a big problem. So don't say anything. I haven't called on you to say anything at this point.

The court expressed its frustration that defendant had not complied with a prior order. But added: "I'm sorry to say I think he's receiving advice from someone who doesn't spend any time in Superior Court, Family Court and that has probably contributed to this situation. But I am inclined to afford to [plaintiff's counsel] really what[ ]ever remedy [they] want." The court described himself as using a "raised voice and excited tone."

Later, the court told defendant's counsel he "should stick to patent law," he had wasted everyone's time and made the situation worse. The court also said it was "tempted . . . to set [the case] down for an [o]rder [t]o [s]how [c]ause as to why [defendant's counsel] should not be sanctioned a lot of money. I'm just so tempted to do it. But I just don't have the time."

7

This disparagement of counsel and threats of sanctions for "thousands of dollars" is improper judicial behavior. This is a post-judgment motion to enforce a party's obligation under their MSA. Certainly, the court had seen circumstances before where a party did not abide by its obligation.

A lawyer should not be subjected to that mistreatment in a (virtual) courtroom proceeding in front of their clients. Defendant's lawyer assisted twice in reaching agreements in this matter, alleviating the court of making any decision. That his client later failed to abide by the agreement was not the fault of counsel. Plaintiff sought fees for defendant's failure to comply with the consent order and not as a sanction against his counsel.

For the reasons stated, we disagree that the fee award was a sanction against defendant or his counsel. However, considering the court's acknowledged tone and behavior, we are constrained to remind the court of its duty to conduct proceedings with dignity, patience and courtesy to litigants and counsel alike.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1853-23