> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is binding only on the
> parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2378-16T3

BARBARA A. MASON,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

THOMAS W. MASON,

    Defendant-Appellant/
    Cross-Respondent.

_____

Submitted May 22, 2018 — Decided August 21, 2018

Before Judges Sumners and Moynihan.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Gloucester
County, Docket No. FM-08-0399-12.

Adinolfi & Packman, PA, attorneys for
appellant/cross-respondent (Robert J.
Adinolfi, of counsel and on the briefs; Julie
R. Burick, on the briefs).

Stacy L. Spinosi, attorney for respondent/
cross-appellant.

PER CURIAM

In this post-judgment divorce matter, defendant Thomas W. Mason appeals the Family Part's orders dated December 20, 2016[1] and January 27, 2017, that provided plaintiff Barbara A. Mason was entitled to survivorship rights to his Public Employees' Retirement System (PERS) pension, and awarded her counsel fees. We affirm that order. Plaintiff cross-appeals from the May 13, 2016 order as amended on December 20, 2016, terminating defendant's alimony obligation due to his early retirement and thereby reducing her counsel fee award. We reverse and remand that decision.

I.

After thirty-two years of marriage, the parties divorced on November 14, 2012, followed by the entry of an Amended Final Judgment of Divorce (AFJD) three weeks later. The parties' Marital Settlement Agreement (MSA), which was incorporated into the AFJD, required defendant to pay plaintiff permanent alimony of $195 per week and maintain a $200,000 life insurance policy for her benefit as long as alimony continued. A year after the divorce was finalized, defendant remarried; plaintiff has remained unmarried. In October 2014, defendant submitted a qualified domestic relations order (QDRO) prepared by Lois Fried, CPA, to divide his pension benefits. Without opposition, it was signed by the court

---

[1] The order is actually dated December 20, 2016, but was filed December 29, 2016.

on December 8. Plaintiff subsequently filed a motion to vacate the QDRO — contending it reflected no survivorship rights, cost of living adjustment, and no interest on defendant's other pension benefits — and to enforce litigant's rights for failure to pay alimony and attorney's fees. Defendant cross-moved to enforce the QDRO and to terminate alimony. The request to vacate the QDRO was denied without prejudice. Defendant's request to terminate alimony was denied without prejudice pending oral argument on April 10. The court set aside the QDRO on May 22, 2015, directing the parties to consult with PERS, ruling that the MSA provided plaintiff survivorship rights and awarded plaintiff counsel fees.

On February 27, 2015, defendant elected to take early retirement with full medical benefits, which reduced his annual income from $70,000 to an annual pension of approximately $42,000, and replaced plaintiff with his new wife as the beneficiary of his life insurance policy. When plaintiff learned of this over a year later, she filed a motion to compel discovery; to require defendant to reimburse her the portion of the pension benefit he had already received plus interest; to reinstate her survivor benefits rights to defendant's pension; to require that defendant obtain life insurance with her as beneficiary to protect his MSA obligation to provide her with his pension benefits; and to have the parties sign a QDRO consistent with the parties intent in the MSA.

Defendant cross-moved seeking reinstatement of the initially submitted QDRO; credits for back taxes paid; termination of his alimony and life insurance obligation retroactive to his retirement date; and counsel fees. Upon concluding the MSA provided that plaintiff had a survivorship interest in defendant's pension, the court ordered on May 13, 2016,[2] that the parties were required to have Fried revise the QDRO to determine plaintiff's share of defendant's pension based on plaintiff alone having the survivorship benefits, and that defendant had to pay plaintiff $1309[3] per month while the QDRO was pending. The order also required defendant to obtain life insurance naming plaintiff as the beneficiary and to pay plaintiff $4000 for her counsel fees. Furthermore, the court terminated defendant's alimony obligation effective February 1, 2015. In a January 27, 2017 order, the court denied defendant's motion to stay enforcement pending appeal, and granted plaintiff's motion to enforce the May 13, 2016 order.

On appeal, defendant contends the court erred in its enforcement of the plain language of the MSA and AFJD with respect

---

[2] The order was issued to the parties on October 5, 2016.

[3] The amount was corrected by the court on December 29, 2016.

to the QDRO and granting plaintiff's survivorship interest with life insurance.

According to paragraph nine of the AFJD:

> The parties shall divide Husbands PERS Plan equally by way of [QDRO] based upon the marital coverture formula, which is from the Date of Marriage; 10/27/79 through Date of Complaint for Divorce; 11/17/11.
>
> **Amount of Wife's Benefits:** Accordingly, effective as of the date of this document, Wife shall be assigned a portion of Husband's retirement benefits in an amount equal to the actuarial equivalent of **Fifty (50%) Percent of the Marital Portion of Husband's Accrued Benefit,** Husband shall be solely responsible for repayment of all pension loans according to requirements of PERS. Husband will take no further pension loans until the QDRO is complete. Wife shall receive a separate interest [o]f Husband's pension, so that any further actions by Husband with respect to the pension loans will not affect Wife's share. Wife's separate interest shall not be affected by the Husband's loans and her benefit shall not be reduced as a result of same. The parties shall share equally in the costs of the preparation of said QDRO utilizing Lois Fried to perform the same.

Defendant argues "the <u>sole purpose</u> of the use of the language 'separate interest' is intended to separate [plaintiff] <u>from any liability as to [his] PERS pension loan</u>."[4] Defendant further argues the language "separate interest" only serves the purpose

---

[4] The parties were unaware at the time of divorce that PERS did not allow distribution with a separate interest approach.

"to insulate [plaintiff] from any liability as to [his] PERS pension loan." We are unpersuaded.

In evaluating defendant's contentions, we are mindful that "[a MSA] is governed by basic contract principles." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). The trial court "should discern and implement the intentions of the parties." Ibid. (citing Pacifico v. Pacifico, 190 N.J. 258, 265 (2007)). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. In addition, a court is not positioned to "rewrite or revise an agreement when the intent of the parties is clear." Ibid. (citation omitted).

In our review, "when [we] conclude[] there is satisfactory evidentiary support for the trial court's findings, '[our] task is complete and [we] should not disturb the result.'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "[L]egal conclusions

are always reviewed de novo." <u>Id.</u> at 433-34 (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

Applying these principles, we conclude the court's decision in determining the parties' intent is supported by the record and consistent with the law. The court concluded "that the inclusion of the word[s] 'separate interest' in . . . [paragraph nine establishes that] . . . [p]laintiff['s] . . . rights create[] a distinction in how the parties intended to treat her interest in [d]efendant's PERS Plan when compared to [d]efendant's interest in [p]laintiff's Shoprite Pension." The court further analyzed the meaning of "separate interest" by comparing the definitions supplied by the Department of Labor (DOL) and its plain meaning. The court notes, the DOL

> describes the separate interest approach as dividing the participant's benefit, rather than just payment, into two separate portions which allows the alternate payee to manage their benefit with the same rights as those of the primary beneficiary. The separate approach allows for the alternate payee to receive their benefit based on their life expectancy and retirement age. It creates, by definition a survivorship right. . . . The separate interest approach effectively grants the alternative payee an independent benefit that is not linked to that of the primary payee.

The court also found "there is no evidence that . . . [p]laintiff entered an agreement to accept a benefit essentially up to twenty

percent less than her actual . . . 'fifty percent actuarial coverture share.'" The court thus reasoned the words "separate interest" were included in the MSA to intentionally provide survivorship rights to plaintiff. The court further noted that the words "'separate interest' were not needed to protect either parties from the negative impact of pension loans made by the other." In sum, the court properly analyzed the MSA's inclusion of the term "separate interest," and we agree with its determination that it was "included in the [MSA] intentionally with the intent of providing a survivorship right in . . . [p]laintiff to her equitable distribution share of the PERS pension in monthly payments until her death, regardless of whether . . . [d]efendant predeceased her."

Defendant argues that the court erred in finding plaintiff was entitled to a survivorship interest in his pension in accordance with the AFJD's paragraph ten, which provides:

> The parties shall divide the Wife's Shoprite Pension Plan equally for all benefits accrued during the marital [coverture], from the date of marriage; 10/27/79 through 11/17/11; Date of Complaint for Divorce. It is the [intension] of the parties for [defendant] to receive 50% of the marital covertures portion of this pension. In the event that as of the date [of] Complaint [there] existed a pension loan with an amount still owed of as of the Date of Complaint as well as loans taken post complaint, if any, [plaintiff] is solely responsible for the repayment of any pension

loans under this plan and [defendant's] benefit shall not be reduced by the amount of said outstanding loans. The parties shall share equally in the costs of the preparation of said QDRO utilizing Lois Fried to perform the same.

Our review of the record discloses there was adequate, substantial, credible evidence in the record to support the findings made by the court. Thus, we find no fault with the court's reasoning:

[p]laintiff's retirement benefit is a fraction of [d]efendant's. Defendant was the main wage earner during the thirty-two year coverture period of the marriage. As a result, his pension is much more valuable. It was logical to not provide a separate survivorship right to [d]efendant in [p]laintiff's plan to avoid the additional cost of that right, given that [d]efendant is not dependent on that monthly payment to meet his needs.

The court's decision is consistent with N.J.S.A. 2A:34-23.1(f), which requires the consideration of "[t]he economic circumstances of each party at the time the division of property becomes effective."

In challenging plaintiff's right to survivorship benefits, defendant also argues that the court erred in requiring him to provide life insurance for plaintiff's benefit because he retired and decided to give his survivorship rights to his new wife in place of plaintiff. Recognizing that the pension plan does not allow defendant to choose another survivorship beneficiary because

9

thirty days have passed since his retirement start date, the court found that "[t]he only remaining mechanism which the court may order is for him to provide life insurance naming [plaintiff] as irrevocable beneficiary and providing a decreasing death benefit, annually, based on the then present value of funding a lump sum sufficient to provide her monthly benefits should [he] predecease her."[5] We conclude the court's decision is a sound remedy to place the parties in the position as set forth in the MSA; that plaintiff is entitled to her alimony payments should defendant predecease her.

We turn next to the parties' respective contentions regarding continuation of alimony payments to plaintiff. Defendant argues the court failed to terminate his alimony obligation retroactive to the date of his retirement. He contends the court's decision violated N.J.S.A. 2A:34-23(b) and -23(j)(4),[6] by allowing

---

[5] To avoid reducing defendant's current available disposable income, the court also suggested that defendant's second wife could voluntarily agree to divert $1309 from her pension survivorship benefits to pay plaintiff's monthly alimony as set forth in the MSA; leaving the second wife with the balance of $1700 per month. However, the court admitted it had no authority over the second wife.

[6] According to N.J.S.A. 2A:34-23(j)(4), "assets distributed between the parties at the time of the entry of a final order of divorce or dissolution of a civil union shall not be considered by the court for purposes of determining the obligor's ability to pay alimony following retirement."

plaintiff "to continue collecting alimony despite [his] retirement." On the other hand, plaintiff's cross-appeal contends the court erred in finding defendant's early retirement and termination of alimony is "without full disclosure by defendant about his financial situation and without a full analysis of N.J.S.A. 2A:34-23(j)." Plaintiff further adds that an "inquiry should be made as to whether the retirement was in good faith but also whether . . . it was reasonable for the supporting former spouse to elect early retirement" based on the applicable factors of N.J.S.A. 2A:34-23(j).[7] We conclude the merits favor plaintiff.

Effective September 10, 2014, our legislature amended the alimony statute, N.J.S.A. 2A:34-23, to add a new subsection (j), which began by stating: "Alimony may be modified or terminated upon the prospective or actual retirement of the obligor." N.J.S.A. 2A:34-23(j). In addition, N.J.S.A. 2A:34-23(j)(2), provides in pertinent part:

> (2) Where the obligor seeks to retire prior to attaining the full retirement age as defined in this section, the obligor shall have the burden of demonstrating by a preponderance of the evidence that the prospective or actual retirement is reasonable and made in good faith. Both the obligor's application to the court for modification or termination of alimony and the obligee's

---

[7] Plaintiff also contends a letter by defendant's doctor regarding defendant's medical condition resulting in his retirement was inadmissible hearsay.

response to the application shall be accompanied by current Case Information Statements or other relevant documents as required by the Rules of Court, as well as the Case Information Statements or other documents from the date of entry of the original alimony award and from the date of any subsequent modification.

In order to determine whether the obligor has met the burden of demonstrating that the obligor's prospective or actual retirement is reasonable and made in good faith, the court shall consider the following factors:

(a) The age and health of the parties at the time of the application;

(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

12

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the obligor's decision to retire and the parties' respective financial positions.

Because the court failed to conduct an analysis under this statute, we remand for the court to do so. Should the court determine that termination of alimony is appropriate, it must also determine the effective date of the termination.

Turning to the court's counsel's fee award of $4000 to plaintiff, both parties challenge the decision. Defendant contends plaintiff's certification of service was not compliant with Rule 4:42-9 (b) or (c) or RPC 1.5(a). Plaintiff contends in her cross-appeal that the court erred by reducing her reasonably detailed fee request of $9,597.50. None of these contentions are persuasive.

The decision to award counsel fees in a family court matter "rests in the discretion of the trial court," Addesa v. Addesa, 392 N.J. Super. 58, 78 (App. Div. 2007), and will be disturbed "only on the 'rarest occasion,' and then only because of [a] clear abuse of discretion," Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

In its counsel fee award, the court stated:

13

> The applicable [c]ourt [r]ule requires the court to balance the listed factors. In this series of motions the court finds the most relevant factors to be the parties' comparative resources, the portion of counsel' fees expended to enforce the court's Orders and the reasonableness of the parties' positions. The parties currently appear to have equally modest means. . . . [D]efendant's actions in circumventing . . . [p]laintiff's rights to have the court rule on how the MSA/AFJD should be interpreted have occurred throughout this motion litigation. The first instance was the December 2014 . . . submission of an order under the "five-day rule" for signature by the court, in the absence of consent or a specific court ruling, where plaintiff's attorney had previously and clearly noticed defendant['s] attorney that she disagreed with the language of the QDRO. The second is . . . [d]efendant's election of an irrevocable surviving beneficiary, in contravention of the survivorship right which he knew [p]laintiff was litigating, without advising the court or counsel that he had taken this step. A good deal of the expense of this litigation would not have occurred if he had not taken those actions. To [d]efendant's credit, his position on the reasonableness of his "early retirement[,"] objected to by . . . [p]laintiff, was adopted by the court. Based on the above, the [c]ourt awards $4,000 as attorney's fees payable by . . . [d]efendant to . . . [p]laintiff.

Plaintiff has not shown that the court abused its discretion in the amount she was awarded.

Any arguments not addressed in this opinion lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION