**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3697-17T2

AARON KOSTIHA,

     Plaintiff-Appellant,

v.

CHAYA GREENSPAN,

     Defendant-Respondent.

_____

Submitted February 12, 2019 – Decided March 14, 2019

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1718-17.

Aaron Kostiha, appellant pro se.

Snyder Sarno D'Aniello Maceri & da Costa LLC, attorneys for respondent (Angelo Sarno and Lydia S. LaTona, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from orders entered by the Family Part on January 19, 2018, and February 13, 2018, which required defendant to appear before the Beis Din of America (Beis Din) and comply with its procedures for providing defendant a Jewish divorce known as a "get." Plaintiff also appeals from an order dated March 21, 2018, which awarded defendant attorney's fees and costs. For the reasons that follow, we dismiss the appeal from the January 19, 2018 and February 13, 2018 orders, and reverse the order of March 21, 2018.

I.

We briefly summarize the relevant facts and procedural history of this dispute. In December 2014, the parties were married in a Jewish ceremony in New York, during which the parties entered into a marriage agreement known as a "ketubah." The agreement states in part that defendant agrees to be plaintiff's wife "according to the Law of Moses and Israel."

The parties separated shortly after the marriage and on May 14, 2015, plaintiff filed a complaint in the Supreme Court of the State of New York, Kings County, seeking an annulment of the marriage. In May 2015, the parties executed a stipulation of settlement, in which they agreed to the equitable distribution of certain property and waived any claims they might have for spousal support. The stipulation also stated that "there are no children of the

2

marriage and none are expected." It appears, however, that defendant was seven months pregnant at the time the parties signed the stipulation.

In May 2015, defendant obtained a "get" from a rabbinical court. In a certification filed in the trial court, defendant asserted that she is an observant Orthodox Jew and adheres to the principles of Orthodox Judaism. Defendant stated that under Jewish law, a civil divorce or annulment does not automatically sever the marital relationship between two individuals.

Defendant asserted that Jewish law requires a husband to provide his spouse with a "get," obtained from a rabbinical court. Defendant stated that until the "get" is issued, the couple is still considered married and neither will be permitted to remarry in the Jewish faith. She said the procedure for obtaining a "get" is not complicated and "takes no time at all."

In July 2015, defendant gave birth to a child. It appears that defendant was residing in New Jersey at that time. On August 4, 2015, plaintiff filed a complaint in the Family Part of our Superior Court seeking parenting time with the child. Defendant opposed the motion and filed a counterclaim seeking, among other relief, custody of the child. On January 8, 2016, the New York court entered a judgment, which annulled the parties' marriage.

A-3697-17T2

On May 5, 2016, the Family Part entered an order awarding defendant temporary legal and residential custody of the child, with plaintiff allowed supervised parenting time. Thereafter, difficulties arose between the parties over parenting time and other issues, which resulted in the issuance of certain orders by the Family Part and a New York court.

In December 2016, plaintiff contacted the Beis Din, which is a rabbinical court that assists persons of the Jewish faith to obtain Jewish divorces. According to defendant, plaintiff attempted to call into question the validity of the "get" the parties had obtained in May 2015. Plaintiff allegedly informed Rabbi Shlomo Weissman of the Beis Din that after the "get" was issued, he continued to reside with defendant.

Rabbi Weissman informed plaintiff that if this were true, the couple would have to appear before a rabbinical court to obtain another "get." Rabbi Weissman later testified in the trial court that another "get" was required because the act of living together constituted a "remarriage" in the Orthodox Jewish religion.

After his conversation with plaintiff, Rabbi Weissman contacted defendant and she asked him to arrange for the issuance of another "get." In March 2017, the Beis Din issued two letters to plaintiff directing him to appear

4

so that the second "get" could be issued. Plaintiff did not appear. On April 6, 2017, the Beis Din sent plaintiff another letter, which stated that Jewish law required that he comply with its summons. The April 6, 2017 letter also stated that if plaintiff did not respond, he could be subject to a contempt order of the Beis Din "and its consequences."

On April 26, 2017, the Beis Din wrote to plaintiff and informed him that a contempt order could be issued if he did not comply with its summonses. On May 4, 2017, the Beis Din issued a formal order of contempt to plaintiff based on his failure to comply with the previously-issued summonses. Thereafter, the Beis Din granted defendant permission "to pursue any remedies permitted by secular law."

On September 19, 2017, defendant filed a motion in the Family Part which sought, among other relief, an order compelling plaintiff to appear before the Beis Din and assist her in securing a second "get." Defendant also sought sanctions if plaintiff did not comply with the directives of the Beis Din, and an award of attorney's fees and costs. Plaintiff opposed the motion and filed a cross-motion seeking, among other relief, an order requiring defendant to cooperate with a paternity test.

A-3697-17T2

By order dated January 19, 2018, the Family Part judge granted defendant's motion and ordered plaintiff to appear before the Beis Din within fourteen days and to comply with its procedures if the Beis Din "recommended" a second "get." The judge denied defendant's motion for sanctions and reserved decision on defendant's application for attorney's fees. The judge also granted plaintiff's motion and ordered the parties to cooperate in obtaining a paternity test.

On February 13, 2018, the parties again appeared before the trial court. The judge noted that plaintiff had not complied with the court's January 19, 2018 order. Plaintiff told the judge he did not intend to go "to any Jewish ceremony of any kind with my ex-wife in New York." Plaintiff stated that he would not go before the rabbis because he had "religious objections to what they represent."

The judge placed his decision on the record. The judge stated:

> [It is] clear that . . . Jewish law . . . says that until a woman obtains a [g]et from her husband . . . she is still considered married to her husband and has no ability to remarry nor to have children from another relationship if she violates this law.
>
> She is considered an adulteress and the child born to such married woman from that subsequent relationship is deemed to be a mamzer. And a mamzer is forbidden to marry another Jew and the mamzer may also not

6

marry a gentile. As he or she is still deemed to be a Jew a mamzer is permitted to marry only another mamzer.

. . . .

Thus traditional observant Jewish women cannot and will not remarry or even date without first obtaining a [g]et from their husband.

. . . .

Because the [g]et is the only lifeline for a married woman who wants out of her marriage and because . . . only the husband . . . is authorized to give it to her[,] the [g]et becomes a tool used by many men to either extort huge sums of the money, . . . or to give up all civilly authorized property, . . . [or] to give the husband custody of the children.

The judge stated that he believed plaintiff was using his religious beliefs "as a means" to get back at defendant as a result of their disputes concerning their child.

The judge entered an order, which required plaintiff "to appear before the Beis Din and participate in and comply with [its] procedures in order to provide [d]efendant with a Jewish Divorce, i.e., a [g]et if recommended by the Beis Din." In addition, the order stated that plaintiff's parenting time was suspended indefinitely "pending [p]laintiff's appearance, participation, and compliance with the Beis Din."

A-3697-17T2

On February 20, 2018, plaintiff filed a motion for leave to appeal from the trial court's orders of January 19, 2018, and February 13, 2018.  Plaintiff also sought a stay of the orders pending appeal, a change of venue, and certain other relief.  Defendant opposed the motions.  While the motions were pending, the Family Part issued an order dated March 21, 2018, which awarded defendant $19,353.02 in attorney's fees and costs.

On March 29, 2018, we granted in part plaintiff's motion for leave to appeal and summarily reversed the provision of the February 13, 2018 order that suspended plaintiff's parenting time.  In our order, we stated that there was an "insufficient basis in the record to establish that [the suspension of parenting time] will further the best interests of the child."  We denied the other relief requested.

On April 20, 2018, plaintiff filed a notice of appeal from the trial court's orders of January 19, 2018, February 13, 2018, and March 29, 2018.  Thereafter, defendant filed a motion to dismiss plaintiff's appeal as moot.

In a supporting certification, defendant's attorney stated that, after plaintiff filed his appeal, "circumstances changed such that [d]efendant no longer needed [p]laintiff to provide her a [g]et and [d]efendant withdrew an application pending in the trial [c]ourt to enforce the January 19, 2018 and

February 13, 2018 [o]rders." Counsel also stated that defendant had "proposed [to the trial court] that an [o]rder be entered to vacate the provisions of the [o]rders dated January 19, 2018 and February 13, 2018, relative to the issue."

We denied defendant's motion to dismiss the appeal, but temporarily remanded the matter "to the trial court for the limited purpose of permitting defendant to file a motion to vacate those parts of the trial court's orders compelling plaintiff to cooperate with defendant in securing a 'get.'" By order dated July 26, 2018, the trial court entered an order, which vacated "all prior [c]ourt [o]rders as they relate to [d]efendant's application to compel [p]laintiff to obtain a Jewish [g]et."

## II.

On appeal, plaintiff argues that the trial court's order compelling him to appear before a Jewish rabbinical court violates his rights under the First Amendment to the United States Constitution. In response, defendant argues that in view of the trial court's order of July 26, 2018, this issue is moot. Alternatively, defendant argues that the trial court's orders requiring plaintiff to appear before the rabbinical court did not violate plaintiff's First Amendment rights.

"It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Cinque v. N.J. Dep't of Corrections, 261 N.J. Super. 242, 243 (App. Div. 1993) (citing Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303-04 (1975)). "An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corrections, 382 N.J. Super. 254, 257-58 (App. Div. 2006) (quoting N.Y.S. & W.R. Corp. v. State Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (Tax Ct. 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985)).

As noted, plaintiff argues that the trial court's orders requiring him to appear before a rabbinical court violate his rights under the First Amendment. However, as we have explained, after those orders were entered, defendant advised the court she no longer requires plaintiff's appearance before the rabbinical court. Consequently, the trial court entered the order dated July 26, 2018, which vacated the provisions of the orders requiring his appearance before the rabbinical court and his compliance with its procedures.

Therefore, the issue of whether the relevant provisions of the trial court's orders of January 19, 2018, and February 13, 2018, violate plaintiff's First Amendment rights is moot. Any decision on that issue will have no practical

effect. Accordingly, we dismiss plaintiff's appeal from the trial court's orders of January 19, 2018, and February 13, 2018.

III.

Plaintiff further argues that the trial court abused its discretion by granting defendant's motion for attorney's fees. We review a trial court order awarding counsel fees under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

N.J.S.A. 2A:34-23 authorizes the Family Part to award counsel fees in a matrimonial action after a judge considers "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good faith or bad faith of either party." Chestone v. Chestone, 322 N.J. Super. 250, 255-56 (App. Div. 1999) (quoting N.J.S.A. 2A:34-23). Rule 4:42-9(a)(1) provides that, in family actions, a "fee allowance both pendente lite and on final determination may be made pursuant to [Rule] 5:3-5(c)."

Rule 5:3-5(c) states in pertinent part that when determining a fee award, the court should consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions

11

advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

In this case, defendant sought an award of attorney's fees for her motions to compel plaintiff to appear before the rabbinical court. Defendant also sought fees she incurred in responding to plaintiff's earlier appeal. The judge granted the motion for reasons stated in a written opinion dated March 21, 2018.

In the opinion, the judge addressed the factors enumerated in Rule 5-3-5(c). The judge noted that defendant had incurred $19,951.02 in counsel fees in the trial court proceedings, and $4402.00 in fees related to plaintiff's appeal, for a total of $24,353.02. It appears that defendant's counsel agreed to reduce his total fee by $5000, as a "courtesy," thereby resulting in a request for the award of $19,353.02.

The judge pointed out that plaintiff was self-represented and did not incur any attorney's fees. The judge also observed that defendant had prevailed on her motions, and the relief plaintiff sought in his cross-motion had been "largely" denied. The judge determined that the fees sought were reasonable.

12

The judge found plaintiff had acted in bad faith by unreasonably refusing to appear before the Beis Din so that defendant could secure the second "get," if recommended by the Beis Din. The judge stated that plaintiff "made his bad faith apparent" by asserting that he would not assist defendant obtain the second "get" unless the agreements for custody and parenting time were renegotiated in his favor. The judge found that plaintiff's position was unreasonable and contrary to the best interests of the child.

The judge further found that plaintiff had displayed bad faith by giving conflicting testimony in court regarding his refusal to appear before the Beis Din. Plaintiff had testified that he was no longer Jewish and had returned to the Catholic faith, but he later stated that a rabbi told him not to cooperate. The judge observed that plaintiff had remarried, but he had willfully and unreasonably withheld the "get," thereby preventing defendant from remarrying in the Jewish faith. The judge found this was "an attempt to gain an advantage in the unrelated, custody dispute."

As stated previously, in addition to the attorney's fees for the trial court proceedings, defendant sought fees of $4402.00 for responding to plaintiff's earlier appeal. Rule 2:11-4 provides, however, that fees for legal services on appeal must be sought in this court, not the trial division. Moreover, as we have

13

explained, plaintiff succeeded in part in his earlier appeal. We recognize that defendant's counsel agreed to reduce his overall fee by $5000. However, the fees for the appeal were included in the overall fee from which the reduction was made.

In any event, we are convinced the trial court erred by awarding defendant attorney's fees. That decision was based primarily on the court's finding that plaintiff's opposition to defendant's motions was unreasonable and advanced in bad faith. The record does not support that conclusion. Plaintiff had a good faith basis under the law for arguing that the trial court did not have authority to compel him to appear before a religious tribunal and comply with its divorce procedures.

It is well-established that "civil courts may resolve controversies involving religious groups if resolution can be achieved by reference to neutral principles of law, but that they may not resolve such controversies if resolution requires the interpretation of religious doctrine." Ran-Dav's County Kosher, Inc. v. State, 129 N.J. 141, 162 (1992) (citations omitted).

Our Supreme Court has not addressed the issue of whether the New Jersey courts may order a party to appear before a rabbinical court and comply with its procedures for issuing a "get." Moreover, this court has not addressed that issue

14

in a precedential, published opinion. The issue has, however, been addressed by the Chancery Division in three published opinions.

In <u>Minkin v. Minkin</u>, 180 N.J. Super. 260, 261 (Ch. Div. 1981), the plaintiff sought an order requiring the defendant to obtain a "get." The court noted that the parties had been married in a Jewish ceremony, and they entered into a "ketuba" in which they agreed to abide by the laws of Moses and Israel. <u>Id.</u> at 262. The court found that those laws required the husband to give his wife a "get" if he claims she engaged in adultery. <u>Ibid.</u> Because the defendant had filed a counterclaim in the divorce action alleging adultery, the plaintiff demanded that the defendant provide her with a "get." <u>Ibid.</u>

The court conducted a plenary hearing, during which a rabbi testified that issuance of a "get" is not a religious act, but the severance of the contractual relationship between the parties. <u>Id.</u> at 265. Another rabbi testified that an order requiring a husband to provide a "get" would not be an interference with religion because the "get" is "only concerned with the right of the wife to remarry" and "does not affect the religious feelings of people." <u>Ibid.</u> Another rabbi testified that a "get" is "civil and not religious in nature." <u>Id.</u> at 265.

Based on testimony presented at the hearing which the judge found credible, the judge decided that acquisition of a "get" is not a religious act and

15

an order compelling the defendant to secure the Jewish divorce would "have the clear secular purpose of completing a dissolution of the marriage." Ibid. The judge found that the primary effect of the order would neither advance nor inhibit religion, and it would not constitute an excessive entanglement with religion. Ibid.

A similar result was reached in Burns v. Burns, 223 N.J. Super. 219 (Ch. Div. 1987). In that case, the parties were divorced and the plaintiff remarried, but chose not to obtain a "get" before the second marriage. Id. at 222. The defendant planned to remarry but believed she was bound by Jewish law and needed a "get" before she remarried. Ibid. The plaintiff took the position that a "get" was not required, but he stated that he would secure the religious divorce if the defendant invested $25,000 in an irrevocable trust for their daughter. Ibid.

The Chancery Division judge found that the defendant's offer of compromise showed his refusal to secure the "get" was not based on his religious beliefs, but was instead "an issue of monetary gain." Id. at 223. The judge then addressed the question of whether an order requiring the defendant to obtain the "get" would violate the First Amendment. Id. at 224-26. The judge noted that he had reviewed certain "learned treatises" on the laws of Moses and Israel, and

determined "there are various circumstances which would require the husband to secure a 'get' from his wife." Id. at 225.

The judge held that the court had the authority to order the defendant to submit to the jurisdiction of the Jewish ecclesiastical court and require that the defendant initiate the procedures to secure a "get" for his spouse. Id. at 226. The judge wrote that the defendant divorced his wife and remarried, but under Jewish law, the plaintiff and the defendant were still considered to be married. Ibid. The judge stated, "The plaintiff must release the defendant from the [ketubah] and put an end to that relationship." Ibid.

However, in Aflalo v. Aflalo, 295 N.J. Super. 527 (Ch. Div. 1996), the court reached a different result. There, the plaintiff filed an action for divorce, and the defendant took the position he would not consent to a Jewish divorce regardless of what happened in the civil divorce action. Id. at 530-31. The Chancery Division judge stated that the court in Minkin erred by considering the issue against the backdrop of the Establishment Clause, rather than the Free Exercise Clause of the First Amendment. Id. at 537.

The Chancery Division judge also disagreed with the Minkin Court's statement that an order requiring a husband to provide a "get" is not a religious act. Id. at 538. The judge found that such an order is not concerned solely with

17

civil issues, and compelling a party to obtain a "get" would not have the desired effect because under Jewish law, the husband must take that action willingly. Id. at 538-40. The judge in Aflalo refused to order the husband to obtain the "get." Id. at 542.

The judge stated that this may seem unfair, but any unfairness was due to the fact that the wife had "sincerely-held religious beliefs." Ibid. The judge observed that when the wife was married in the Jewish ceremony, she had agreed she would abide by the laws of Moses and Israel, and under those laws, she may not remarry unless her husband provides a "get." Ibid. The judge wrote that the court had no authority to choose for the parties "which aspects of their religion may be embraced and which must be rejected." Ibid.

Thus, in this case, Minkin provided support for defendant's motions to compel plaintiff to appear before the Beis Din and comply with its procedures so that defendant could obtain the "get" if recommended by the Beis Din. Moreover, Burns provided support for defendant's applications to the extent plaintiff was refusing to participate in the process in order to coerce defendant to agree to a change in the established custody and parenting arrangements, as defendant claimed.

However, <u>Aflalo</u> provided a sound legal basis for plaintiff to oppose the relief defendant was seeking. We are therefore convinced that there is insufficient evidence in the record to support the court's finding that plaintiff acted unreasonably and in bad faith by opposing defendant's motions and refusing to appear before the Beis Din. Since that finding was the principal reason the court awarded defendant attorney's fees, the award must be set aside.

In summary, because the issue is now moot, we express no view as to whether the trial court's orders requiring plaintiff to appear before the Beis Din and comply with its procedures violated plaintiff's rights under the First Amendment. We hold only that plaintiff had a reasonable basis to object to the relief defendant was seeking and the award of attorney's fees to defendant was a mistaken exercise of discretion. Accordingly, we reverse the trial court's order of March 21, 2018, awarding defendant attorney's fees.

The appeal from the trial court's orders dated January 19, 2018, and February 13, 2018, is dismissed as moot; and the order dated March 21, 2018, is reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-3697-17T2