**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0728-23

S.M.,

    Plaintiff-Respondent,

v.

S.L.,[1]

    Defendant-Appellant.

_____

Submitted January 22, 2025 – Decided May 6, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1723-22.

Law Office of Eileen M. Foley, LLC, attorney for appellant (Eileen M. Foley, on the brief).

Law Office of Rachel S. Cotrino, LLC, attorneys for respondent (Rachel S. Cotrino and Amy Sara Cores, on the brief).

---

[1] We use initials and a pseudonym to protect the minor's privacy. See R. 1:38-3(d).

PER CURIAM

Defendant S.L. appeals from a Final Judgment of Divorce (FJD) entered after a three-day trial. She challenges terms in the FJD concerning: (1) the allocation and payment methodology of marital tax liabilities; (2) the amount and the retroactive effective date of the alimony obligation; and (3) the assessment of a $31,964.50 counsel fee against her. Based on our review of the record and application of the pertinent legal principles, we affirm the trial court's determination concerning equitable distribution of the tax liabilities. However, we reverse and remand the methodology for payment of the tax liabilities to the State of New Jersey, the alimony awarded, and counsel fees assessed against the defendant for further proceedings consistent with this opinion.

## I.

The parties were married on March 19, 2009 in India. Immediately following the marriage, plaintiff assisted in enrolling defendant in a master's degree program beginning at the University of Cincinnati and eventually concluding at Rutger's University. Defendant immigrated to the United States shortly after the marriage on an International Student and F-1 Visa. Defendant was not permitted to work in the United States until she obtained her green card

through plaintiff. Defendant received her green card in December 2014, over five years after they married. Prior to the marriage, defendant had also obtained a Bachelor of Science degree and a master's degree in India.

During the marriage, plaintiff and defendant primarily resided in a two-bedroom apartment in Woodbridge. The lease to the apartment was solely in plaintiff's name. Two sons were born of the marriage, currently ages nine and ten. The parties resided with the children in the apartment until November 2021 when plaintiff was removed because defendant was awarded a temporary restraining order (TRO), under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant. After the TRO was entered, plaintiff relocated to an apartment in the same complex.

The parties resolved the TRO by a consent order entered in February 2022 under an FD non-dissolution docket number. The order granted physical custody of the children to the parties on a "50/50" basis and required plaintiff to pay unallocated support of $500 per month to defendant and the children and $2,000 per month for the rental costs of the marital apartment "until 9/2022 when the lease is up . . ." The order also granted defendant sole use, occupancy, and enjoyment of the apartment until the lease expired. On March 17, 2022, plaintiff filed his complaint for divorce.

3

Prior to the divorce trial, the parties were able to resolve custody and parenting time issues, medical insurance, distribution of motor vehicles, distribution of personal property, disposition of the marital residence, the term of limited duration alimony, and tax dependency exemptions. They were unable to resolve issues concerning the amount of alimony, life insurance to secure alimony, child support, work-related childcare, the credit allocation for plaintiff's payment of tax liens from the sale of his pre-marital condominium, costs attendant to defendant's use of the apartment, distribution of marital assets and debts including jewelry, bank accounts, stock accounts, retirement accounts, 529 accounts, credit card debt, tax liabilities, and counsel fees.

During the three-day trial, the parties jointly submitted the following evidence: retirement account statements; the children's 529 account statement; plaintiff's Robinhood account statement; and plaintiff's Sharecare retirement and RSU account statements. The plaintiff also moved documents into evidence at trial including: a promissory note to his cousin in the amount of $93,000; cancelled checks for payment of the promissory note; statements evidencing payment of defendant's tuition; documents supporting his expenses prior to the divorce; the parties' lease and lease renewal; documents showing proof of payments of pendente lite expenses; documentation showing federal and state

4 <span>A-0728-23</span>

tax deficiencies; all of his case information statements (CIS) submitted during the divorce including his updated CIS; and draft child support guidelines calculations.

The trial court rendered a written decision and entered an FJD on September 28, 2023. In its decision, the court found plaintiff to be "extremely credible." The court noted his positions were "reasonable." The court maintained that plaintiff was able to document his claims with "almost excruciating detail." Conversely, the court found defendant to be "less than credible." The court found that much of her testimony was based upon "unsubstantiated allegations and opinions not grounded in any fact," and that she was unable to produce proof of her claims.

Specifically, the court made the following findings regarding the valuation of assets and liabilities of the parties:

| | |
|---|---|
| Plaintiff's Bank Accounts | $ 31,811.62 |
| Defendant's Bank Accounts | $ 500.00 |
| Plaintiff's Retirement Accounts | $ 122,806.00 |
| Plaintiff's RSU Account & Robinhood Mutual Fund | $ 860.00 |
| Plaintiff's Premarital Condominium (sold to pay IRS in 2018) | $ 66,330.04 |
| Plaintiff's Credit Card Debt | $ 18,623.00 |
| Plaintiff's Loan from his Cousin | $ 93,000.00 |
| Joint Debt State of N.J. | $ 51,000.00 |
| Plaintiff's Legal Fees | $ 57,464.00 |

5

The court cited N.J.S.A. 2A:34-23.1 (equitable distribution statute) and made findings related to all sixteen factors of the statute. The court determined defendant would continue to maintain sole and exclusive possession of the marital apartment and required her to vacate the property within thirty days of the entry of the FJD. The court also found defendant would be responsible for all rent, costs, and utilities of the apartment prior to vacating.

The court found the condominium in Iselin was a pre-marital asset belonging to plaintiff. The court determined the condominium sale proceeds of $66,330.04 were paid to a marital IRS tax lien. The court found the tax lien "resulted from the non-payment of taxes which were not paid in order to pay for defendant's [second] master's degree" and therefore plaintiff was "entitled to a credit of $33,165" from defendant. The court stated there was a "logical nexus between the payment of the tax lien and [the costs of defendant's second] master's degree."

The court determined that the costs of defendant's second master's degree were approximately $70,000 and were paid from funds that "should have rightly gone to pay federal and state income taxes." The court determined the "defendant's immigration status in the United States (student visa) was in

6

jeopardy unless she was enrolled" in her master's degree program and that she "clearly benefitted from having a [second] master's degree."

The court found defendant's testimony claiming that she was unaware of the tax liabilities, signed the tax returns without reading them, and was "completely naive to the nature of the funding of the degree" was "simply unavailing." The court determined the parties' 2016 federal tax liability grew to $167,000 and plaintiff used his pre-marital condominium sale proceeds of $66,330.04 to pay down part of the federal tax obligation. The court further determined plaintiff borrowed $93,000 from his cousin to pay down the remaining tax obligations. The court found a joint tax liability was owed to the State of New Jersey of $51,000 and the net marital tax liabilities were $145,000. The court ordered the parties to divide the tax debt equally because defendant "refused to work" and "benefitted from the educational program that caused the indebtedness."

The court also found defendant "has not demonstrated the ability to comply with directives (e.g. vacating the apartment that plaintiff had to pay for) and as such plaintiff will be obligated to repay the debt." The court determined plaintiff was entitled to a credit from defendant of $72,000 for the marital tax

7

liabilities. Concerning the methodology to pay the tax liabilities and loan from plaintiff's cousin, the court stated:

> Plaintiff shall be required, on an annual basis, to provide defendant proof of the payoff [] [of] any outstanding joint federal or state tax liability as well as actual loan repayment to plaintiff's cousin. If there is any future loan "forgiveness" by plaintiff's cousin or tax abatement by the federal or state taxing authorities the defendant shall have a claim for a credit from the plaintiff on a dollar-for-dollar basis to share in any such forgiveness or abatement.

Concerning alimony, the court cited N.J.S.A 2A:34-23(b) (alimony statute) and analyzed the fourteen factors based on the evidence presented at trial. Specifically, the court found the parties were married thirteen years, defendant earned $46,000 per year, and plaintiff earned $133,000 per year at the time of trial. The court also determined that defendant has a need for alimony and plaintiff has "some ability" to pay alimony, "but both will be affected by the marital lifestyle and debt service considerations." The court found defendant "refused or was reluctant to work during the marriage despite having a prior work history of ten years" and that "she is a highly educated person having earned a bachelor's degree and master's degree in India. After immigrating to the United States in 2009, she acquired a [second] master's degree from Rutgers's University. Both parties were in relatively good health."

8

Concerning factor four of the alimony statute, the standard of living during the marriage, the court found

> According to the plaintiff's CIS, the joint marital lifestyle was $6,980 per month inclusive of marital debt service. Certain of defendant's stated expenses will be removed since they are not or will not be incurred in the future (e.g., medical, health insurance, payment to non-child dependent, reduced food expenses [and] certain debt service). The adjusted marital lifestyle for the defendant could be decreased by $2,700 per month. The same analysis for the plaintiff results in an increase of $1,000 per month due to the reduction is some non-applicable expenses and the increase in debt service.

Concerning factor ten of the alimony statute related to equitable distribution, the court found

> This is a significant factor in this case. The debt service to be addressed in equitable distribution effects most of the issues between the parties. The shared goal of obtaining a [second] master's degree was achieved by not paying state and federal income taxes resulting in IRS and [New Jersey] state enforcement actions. Credit card debt is second to the tax issue but present, nonetheless. This will be discussed in greater detail during the [e]quitable [d]istribution analysis.

The court also found that plaintiff funded the expense of defendant's apartment for sixteen months, costing him nearly $47,000. The court stated plaintiff has also paid defendant unallocated support of "$500 per [month]" for the last nineteen months and the pendente lite support totaled $56,000.

9

The court also cited factor fourteen of the alimony statute regarding "[a]ny other factors which the court may deem relevant," and made extensive findings. The court found, "defendant failed or refused to vacate the apartment as she was directed" and refused to secure substitute housing or arrange for the marital apartment to be transferred into her sole name. The court found "[l]imited duration alimony, as stipulated to by the parties, will be for a term of six [] years. This is slightly short of half of the thirteen [] year marriage." The court further stated

> Plaintiff maintains that he can afford $115 per week in alimony. Defendant seeks $470 per week in alimony. The plaintiff[']s justification is far more accurate than defendant's. Alimony factors 3-5, 10, 13 and 14 favor . . . plaintiffs position. Specifically, the parties incurred extensive debt to fund defendant's [second] master[']s degree from Rutgers University and yet defendant still refused to work. . . . [D]efendant testified to the court her current lifestyle but not the marital lifestyle. The defendant received $56,000 in pendente lite support. Finally, defendant refused to vacate the rented apartment despite a court order (consent order) directing her to do so —all to plaintiff's detriment.
>
> Plaintiff's alimony obligation is $125 per week for a period of six (6) years. The $39,000 he is obligated to pay has been more than satisfied by way of the $56,000 in pendente lite support. No further alimony is payable and no credit for over payment of pendente lite support is warranted.

10

Thereafter, the court awarded plaintiff counsel fees relying on the factors set forth in Rule 5:3-5(c). Concerning factor one of the rule, the "financial circumstances of the parties," the court found "the debt service of the parties along with defendant's reluctance to be gainfully employed is difficult for the parties." Concerning factor two, the "ability of the parties to pay their own fees or to contribute to the fees of the other party," the court found "the parties' financial circumstances stand in distinct contrast and thus, so too does their respective ability to pay their fees or contribute to the other party's fees." The court further found that "plaintiff has some ability to pay his own fees. The defendant doesn't have any legal fees to pay as she is represented through Central Jersey Legal Services, Inc." Concerning factor three, the "reasonableness and good faith of the positions advanced by the parties," the court found "plaintiff's positions are far more reasonable. . . . [P]laintiff can document almost every aspect of his claim or the defense to the claim of . . . defendant. . . . [D]efendant's claims are largely undocumented and are the product of speculation [and]/or opinion."

Concerning factors four to six, the court found "[p]laintiff incurred counsel fees and costs in the amount of $57,464. . . .[D]efendant did not incur any legal fees or costs." Concerning factor seven, "the results obtained," the

11

court found "plaintiff has prevailed on most of his requested relief." Concerning factor nine, "any other factor bearing on the fairness of the award," the court determined,

> Plaintiff has worked to his maximum capability. Despite a bachelor's degree and [two] master's degrees defendant has been reluctant to work. Plaintiff incurred and paid nearly $60,000 in fees and costs. Defendant has incurred neither. Plaintiff largely proved his case and defendant did not. Defendant was to vacate the apartment that plaintiff was funding pendente lite. She did not and essentially has become a 'squatter' and plaintiff was obligated to continue payments for twelve months now. Mediation occurred September [and] November 2022. From December 2022 through March of 2023 the [c]ourt conducted three [] case management conferences the last [two] of which were intensive settlement conferences. A Stipulation of Settlement was arrived at on March 24, 2023, dealing with a number of factors, both pendente lite and permanently.

The court also considered the factors in RPC 1.5 and found

> This matter has been pending for nearly two years. The fees incurred by plaintiff are considerable, but not unreasonable considering the time and labor that was necessary to litigate this matter to conclusion, which also inherently prevented plaintiff's counsel from working on other matters. The rates charged by plaintiff's counsel are reasonable considering her experience.
>
> Taking everything into consideration, the [c]ourt finds that an award of counsel fees from defendant to plaintiff is appropriate. The [c]ourt is mindful that a certain

12

quantum of fees is his responsibility as would be the case with any litigant who files for divorce. Inherent in the process are pleadings, motions, correspondence and court appearances. The fees would be incurred regardless. Factor [nine] outlines the gravamen of the counsel fee issue, however. Defendant's stubbornness and refusal to negotiate in good faith necessitated the commencement of trial and the last six months of the case. Accordingly[,] . . . plaintiff is entitled to an award of attorney's fees, from . . . defendant, in the amount of $31,964.50 in recognition of the last [five] invoices that he had to pay which would seem to correspond with the timeframes upon which the defendant appears to have been disinclined to work to resolve the issues in the case. Plaintiff shall be obligated to all other costs and fees. Plaintiff shall be entitled to this award prior to any equitable distribution to the defendant.

In summary, the court concluded that plaintiff would retain all assets titled in his name totaling $155,477.62 and defendant would retain her bank account after providing plaintiff with a $500 credit. The court found all assets would be split equally with plaintiff owing defendant fifty percent of $155,477.62 minus $500 or $77,488.81. The court determined the marital debt to be $286,417.37. This figure included plaintiff's counsel fees of $57,464. The court divided the debt between the parties and directed that plaintiff would be entitled to a fifty percent credit from defendant for $143,208.70. The court subtracted the $77,488.81 that plaintiff owed to defendant from the amount defendant owed to

plaintiff, ($147,476.70-$77,488.81) leaving defendant owing plaintiff $69,987.89. The court entered a judgment against defendant and in favor of plaintiff for $71,000.

Concerning alimony, the court determined that plaintiff had paid $2,000 per month rent for the apartment where defendant resided and $500 per [month] in unallocated support from date of complaint to date of the FJD spanning nineteen months. The court found the total paid by plaintiff to defendant was $56,000 and defendant was only entitled to $125 per week of limited duration alimony or a total of $39,000 for the six-year stipulated term. The court determined that plaintiff had paid more in alimony during the pendente lite period than would have been owed for the six-year term and determined plaintiff was not responsible for any further alimony after the entry of the FJD on September 28, 2023. The court also found plaintiff was not entitled to a credit for any over payment. The court ordered defendant to vacate the marital apartment within thirty days of the entry of the FJD.

On appeal, defendant asserts the trial court erred in determining: (1) the alleged loan from plaintiff's cousin was marital debt; (2) plaintiff was required to utilize funds which were allocated to pay the parties tax liabilities to the costs of defendant's master's degree; (3) defendant is responsible for fifty percent of

14

a joint tax judgment held against the parties to the State of New Jersey and crediting plaintiff for her portion of this liability; (4) plaintiff's alimony obligation at $125 per week; (5) plaintiff was entitled to a retroactive credit against the total alimony award for payments he made during the pendente lite period pursuant to Mallamo[2]; and (6) defendant was responsible for $31,964.50 of plaintiff's counsel fees and by crediting this amount against defendant's equitable distribution award.

## II.

Our review of a Family Part judge's findings is limited. We "afford substantial deference to the Family Part's findings of fact because of the court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229, (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022). "We will reverse only if we find the [court] clearly abused [its] discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).

---

[2] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

## A.
## Tax Liabilities and Loan

We first address defendant's contention that the trial court erred in the assessment and apportionment of the tax liabilities. Defendant primarily disputes the court's findings that plaintiff borrowed $93,000 from his cousin and the loan being categorized as marital debt. Defendant asserts plaintiff did not provide sufficient proof he ever obtained a loan from his cousin, essentially claiming he fabricated the loan and that the loan funds were marital debt. We also address defendant's claim that the trial court should not have accepted defendant's testimony that he was unable to pay the federal income tax liability of $164,000 and the State tax liability of $35,000 because of his obligation to pay defendant's costs for her master's degree and it was error by making her responsible for fifty percent of the tax liabilities.

"A family part judge has broad discretion . . . in allocating assets [and liabilities] subject to equitable distribution." Clark, 429 N.J. Super. at 71. In doing so, the court is tasked with dividing property acquired during the marriage in a manner that is just and fair under the circumstances. Steneken v. Steneken, 183 N.J. 290, 299 (2005); see also Genovese v. Genovese, 392 N.J. Super. 215, 225-26 (App. Div. 2007) (outlining steps family courts must take in making an

16

equitable distribution award); N.J.S.A. 2A:34-23.1 (listing non-exclusive factors to consider in making equitable distribution). We review equitable distribution awards for an abuse of discretion or "fail[ure] to consider all of the controlling legal principles." Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009).

In bench trials, our "[d]eference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017) (quoting Cesare, 154 N.J. at 412). We recognize a trial judge who observes witnesses and listens to their testimony, develops "a feel of the case" and is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." Ibid. (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). In contrast, review of the cold record on appeal "can never adequately convey the actual happenings in a courtroom." Ibid. (citing N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012)).

We determine the trial court's reliance on plaintiff's testimony regarding the tax debt and loan was appropriate as there was sufficient, credible evidence in the record supporting the court's findings. Simply put, the court found plaintiff's testimony credible that he borrowed $93,000 from his cousin to pay

17

the parties tax debt. His testimony was supported by a promissory note and bank statements showing he deposited a substantial portion of the monies from the loan into his bank account and paid the tax debt from the account. We recognize that plaintiff admitted on cross-examination that the promissory note was backdated and his accounting of the payments to tax authorities made from this bank account were not completely clear. Nonetheless, we conclude the court's finding that plaintiff's credible testimony supported that the loan was obtained and used to pay the parties' joint tax debt was not an abuse of discretion.

We now address defendant's assertions that plaintiff earned adequate income to pay the joint tax liabilities without having to utilize tax monies and his testimony stating otherwise was not credible. Defendant argues she provided proof that plaintiff paid $60,302 in school costs on her behalf and that plaintiff had the ability to pay both her school costs and the tax liabilities because he was earning an average of over $100,000 per year during that time. We conclude the same deference is owed to the court's finding that plaintiff credibly testified that he paid defendant's school costs in lieu of paying taxes. We note the court's finding related to this issue was not solely based on a dollar for dollar offset. The analysis also considered that defendant was paying all of the parties' marital expenses during this time.

18

We further note defendant's argument that plaintiff's testimony should not have been accepted by the court because plaintiff failed to corroborate the testimony with tax returns evidencing the actual tax liabilities. We observe the principal evidence offered related to this issue was through plaintiff's testimony. We further observe defendant failed to provide reasons why she failed to obtain the joint returns in discovery or through a direct request from the IRS to contest plaintiff's testimony. We further note, as the court mentioned in its decision, that plaintiff was not only paying for defendant's tuition during the time these tax liabilities were incurred but was also paying for all the housing, transportation, and miscellaneous costs of the parties and their two children. We conclude the court's determinations that the tax liabilities were joint marital debts, and that plaintiff paid defendant's school costs in lieu of the taxes is supported by adequate evidence in the record.

Conversely, we part ways with the trial court's decision crediting plaintiff $25,500 in equitable distribution representing defendant's fifty percent portion of the State of New Jersey tax liability. Although we determine the amount and percentage the court attributed to defendant was appropriate and was supported by credible evidence in the record, we conclude the court misapplied its discretion by crediting plaintiff rather than requiring the parties pay the State

19

directly. We therefore reverse this determination and direct the court to enter an order that each party is directly responsible to the State of New Jersey for one-half of the tax obligation owed as of the date of the FJD and each is permitted to negotiate payment terms for their fifty percent responsibility. We are aware that the State is not bound by our determination and can collect the full tax liability because it is owed by the parties jointly and severally. On remand, we direct the court to enter a supplemental order that (1) if either party defaults on their payment obligation to the State which results in an unequal assessment of the liability, either party may move before the trial court for indemnification from the other at the time of any default and, (2) any payments made by plaintiff to the State of New Jersey from the date of the FJD to the date of the order shall be credited against plaintiff's fifty percent portion. We also direct the trial court to enter a provision in the order removing the equitable distribution credit owed from defendant to plaintiff for the State tax liability.

## B.
## Alimony

We now turn to defendant's contention that the court erred concerning the limited duration alimony award to defendant of $125 week and further erred by imposing a retroactive effective date crediting the full gross amount of $39,000

to plaintiff.  A court may order alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just."  See Gnall v. Gnall, 222 N.J. 414, 429 (2015) (concluding alimony awards are "governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b)").  As such, N.J.S.A. 2A:34-23(b) enumerates the following factors for consideration:

> (1) The actual need and ability of the parties to pay;
> (2) The duration of the marriage or civil union;
> (3) The age, physical and emotional health of the parties;
> (4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;
> (5) The earning capacities, educational levels, vocational skills, and employability of the parties;
> (6) The length of absence from the job market of the party seeking maintenance;
> (7) The parental responsibilities for the children;
> (8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;
> (9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;
> (10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or

indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

The statute continues:

In each case where the court is asked to make an award of alimony, the court shall consider and assess evidence with respect to all relevant statutory factors. If the court determines that certain factors are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion. No factor shall be elevated in importance over any other factor unless the court finds otherwise, in which case the court shall make specific written findings of fact and conclusions of law in that regard.

[N.J.S.A. 2A:34-23(b).]

The court must "make specific findings on the evidence about all of the statutory factors" listed above. N.J.S.A. 2A:34-23(c). "[F]ailure to consider all of the controlling legal principles requires a remand." Boardman v. Boardman, 314 N.J. Super. 340, 345 (App. Div. 1998).

22

In any case in which a trial court is required to determine the amount of alimony it must make specific findings of fact on the parties' standard of living. See Crews v. Crews, 164 N.J. 11, 25-26 (2000); see also Cox v. Cox, 335 N.J. Super. 465, 485 (App. Div. 2000) ("clear and definitive" findings on marital standard of living are essential to any permanent alimony award determination). In addition, pendente lite support orders are subject to modification prior to entry of final judgment . . . and at the time of entry of final judgment. Mallamo, 280 N.J. Super. at 12.

Prior to the trial, the parties stipulated to a six-year term of limited duration alimony leaving the amount to be decided by the court. The court made findings addressing each factor of the alimony statute and granted defendant limited duration alimony of $125 per week for a total alimony award of $39,000 for the six-year term. The court then offset this $39,000 by the pendente lite support plaintiff paid to defendant of $56,000. The court found the marital lifestyle was almost $7,000 per month. Thereafter, the court decreased the marital lifestyle figure for defendant by $2,700 per month to $4,300.

"Rule 1:7-4 requires a judge to provide findings of fact and conclusions of law on every [decision] decided by a written order that is appealable by right." Fodero v. Fodero, 355 N.J. Super. 168, 170 (App. Div.2002). See R. 1:7-4

23

(requiring a trial judge to accompany all opinions with findings of fact and conclusions of law). The mere recitation of a published case or a statutory citation does not constitute adequate fact-finding. Instead, the judge's decision must clearly demonstrate that the litigants have been heard, and their arguments considered. A judge must always state what facts form the basis of [their] decision and then weigh and evaluate those facts in light of the governing law "to reach whatever conclusion may logically flow from" those facts. Slutsky, 451 N.J. Super. at 357. Because justice requires no less, "[a]ll conclusions must be supported." Ibid.; see also Dorfman v. Dorfman, 315 N.J. Super. 511, 518 (App. Div. 1998) (holding that merely stating a conclusion that a litigant in a post-judgment matrimonial proceeding has not "shown . . . a substantial change of circumstances warranting a modification" of a prior order is "insufficient under [Rule] 1:7-4(a), [which] require[s] findings of fact and reasons given for conclusions reached").

In sum, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). We conclude the trial court's findings did not satisfy the foregoing requirements.

24

Here, plaintiff earned $87,000 gross per year more than defendant which we conclude is a significant disparity of income. Also, contrary to the court's finding, the record contains defendant's CIS submitted in evidence at trial which included the amount defendant claimed was the joint marital lifestyle. The record also disclosed defendant testified she was unable to work during a significant portion of the marriage because of the lack of a green card and because she was required to provide care for the children, one child being diagnosed on the autism spectrum.

We were unable to discern from the court's written opinion whether it considered: (1) the $87,000 per year income disparity; (2) defendant's assertion that she had no ability to earn income during the marriage because she did not have a green card and because she was responsible for caring for the children; (3) defendant's ability to earn income based on her experience and education level; and (4) defendant's ability to meet her needs while only earning a $46,000 per year gross income without the payment of any actual "in pocket" alimony. We conclude a detailed consideration of these facts is necessary in order to set an appropriate alimony amount and its effective date.

Because our full review is inhibited based on the above issues, we are constrained to remand to the trial court to provide more specific findings of fact

25

and conclusions of law concerning: (1) the standard of living during the marriage; (2) defendant's actual needs and plaintiff's ability to pay alimony both during the pendente lite period and after the FJD; (3) the parties incomes and ability to earn income during the marriage, the pendente lite period and after the FJD, while considering defendant's claims that she was unable to earn income during the marriage and pendente lite period due to the lack of a green card and because of her child care obligations for the parties' children; (4) the specific effect of the equitable distribution of debt on the alimony award, if any; and (5) whether all or a portion of the pendente lite unallocated support should be retroactively credited against defendant's future alimony award taking the above factors into account.

## C.
### Counsel Fees

We now address defendant's claim the trial court erred by requiring her to pay counsel fees through a credit to plaintiff of $31,964.50. The award of counsel fees and costs in matrimonial actions rests in the sound discretion of the trial court. Williams v. Williams, 59 N.J. 229, 233 (1971). An award of fees will not be disturbed in the absence of a showing of abuse. Berkowitz v. Berkowitz, 55 N.J. 564, 570 (1970). We "will disturb a trial court's

26

determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion[,]" Strahan, 402 N.J. Super. at 317 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or a clear error in judgment. Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010).

Where case law, statutes, and rules are followed and the judge makes appropriate findings of fact, the fee award is entitled to deference. Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.7 on R. 5:3-5 (2025); J.E.V. v. K.V., 426 N.J. Super. 475, 493-94 (App. Div. 2012).

One consideration in making an award of fees is whether a party acted in bad faith. Borzillo v. Borzillo, 259 N.J. Super. 286, 291-94 (Ch. Div. 1992); Williams, 59 N.J. at 233. Bad faith may be demonstrated by misuse or abuse of process, seeking relief which one knows or should know that no reasonable argument could be advanced in fact or law to support, intentional misrepresentation of facts or law, and acts of a losing party that are vexatious, wanton or carried out for oppressive reasons. Borzillo, 259 N.J. Super. at 293-94. Also, counsel fees may be awarded when a party has unnecessarily prolonged the litigation. Marx v. Marx, 265 N.J. Super. 418, 429 (Ch. Div. 1993).

27

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V., 426 N.J. Super. at 493 (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). When both parties have a "sufficient ability to satisfy [their] attorney's fee obligation, and neither . . . proceeded in bad faith," the court may justifiably deny the award of counsel fees. Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013).

The court must also consider the following factors:

> (1) the financial circumstances of the parties;
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
> (4) the extent of the fees incurred by both parties;
> (5) any fees previously awarded;
> (6) the amount of fees previously paid to counsel by each party;
> (7) the results obtained;
> (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and
> (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

After applying the foregoing legal principles, we conclude the court misapplied its discretion by ordering defendant to pay counsel fees of

28

$31,964.50 to plaintiff through a credit in equitable distribution. Based on our review, we conclude there was sufficient, credible evidence in the record that defendant had colorable claims for the relief she requested at trial which belies the court's finding of bad faith against defendant. We conclude her argument concerning the loan taken from plaintiff's cousin was made in good faith and was colorable. Defendant's assertion that the loan was not valid had support in the record, including plaintiff's admission that he created and backdated the promissory note years after the loan was allegedly created and the funds were disbursed. Also, plaintiff's testimony accounting for where the loan funds were deposited and distributed were far from certain as the record indicates plaintiff did not clearly account for the payment of approximately $30,000 to taxing authorities. Further, our remand of the alimony issues also supports defendant's contention that she made good faith and colorable arguments concerning the amount and effective date for her alimony request.

We note the court found that defendant's "stubbornness and refusal to negotiate in good faith necessitated the commencement of trial and the last [six] months of the case" causing plaintiff to incur unnecessary counsel fees. We conclude the court failed to mention in its findings that defendant agreed to settle a substantial portion of the issues between the parties prior to trial

including custody, the methodology for determining child support, the term of alimony and which assets and debts were to be considered marital and subject to equitable distribution. Defendant also agreed to resolve the domestic violence issues through the dismissal of her complaint through a consent order. We determine defendant's actions were not indicative of bad faith as she posited reasonable arguments supported in fact and law, was not found to have made intentional misrepresentations of facts or law, and her pre-trial resolution of numerous issues was evidence of her significant cooperation in resolving the parties' disputes. These facts do not support the court's assessment of counsel fees against her.

In addition, we conclude defendant had no ability to contribute to plaintiff's counsel fees even though she had not incurred any counsel fees due to her representation by Central Jersey Legal Services. The court determined defendant earned a yearly gross income of $46,000 and credited all the alimony and equitable distribution monies awarded to her against the amount awarded to plaintiff resulting in defendant receiving no net monies in pocket.

We conclude because the record does not exhibit that defendant acted in bad faith, had no real ability to pay the counsel fee based on insufficient income and was not awarded any liquid assets in equitable distribution, that the court's

determination was error.  Therefore, we reverse and vacate the provision in the FJD imposing counsel fees against defendant and direct the court to recalculate the figures set forth in the FJD and to enter a revised order.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0728-23